# CITY OF MOUNTAIN VIEW, Appellant, v. FARMERS TELEPHONE EXCHANGE COMPANY et al.

### Division One, June 16, 1922.

1. **ESTOPPEL: Municipal Corporation.** While courts apply with much caution the doctrine of equitable estoppel to municipal corporations in matters pertaining to their governmental functions, there are conditions under which estoppel *in pais* may be invoked against them.

2. ——: ——: Rural Telephone System: Erection of Poles in City Streets. Equitable estoppel is available as a defense to an injunction brought by a city to restrain a rural telephone association from renewing its poles and wires upon its streets, where the central exchange switch-board was established and poles and wires were erected within the city without the formal consent of its board of trustees but with the written permission of its chairman, and telephone lines were thereafter established throughout the county, and the exchange and poles and wires on the streets were maintained and telephone communication regularly carried on for a long term of years with the knowledge and full acquiescence of the city officials and inhabitants, and to restrain the erection of renewal poles and wires would result in the destruction of the association's valuable property and positive injustice; but the city is not estopped, by such long acquiescence in the use of its streets, to enact reasonable ordinances regulating and controlling the erection and maintenance of such association's telephone poles and wires. [Distinguishing Holland Realty & Power Co. v. St. Louis, 282 Mo. 180.]

3. ——: ——: ——: ——: Injunction. Injunction is not available where plaintiff has an adequate means of redress in his own hands; and since the city has under the statute ample power to prohibit and prevent encroachment upon its streets, alleys and sidewalks and to provide for the removal of obstructions therefrom, injunction is not available to restrain a rural telephone association from erecting renewal poles and wires along the streets and alleys, where the association had for nearly ten years maintained within the city a central exchange switch-board and wires therefrom connecting with its rural lines, with the full knowledge and acquiescence of the city officials and its inhabitants, but its remedy is to regulate the erection, maintenance and use of such poles and wires by reasonable ordinances.

Certified from Springfield Court of Appeals.

AFFIRMED.

*Lamar & Lamar* and *Green & Green* for appellant.

(1) Legislative sanction conferred through proper state or municipal action is necessary to authorize the use of streets for the posts and wires of a telegraph or telephone company, and if they be constructed without

such sanction they are nuisances and may be enjoined. 2 Dillion on Municipal Corporations (4 Ed.) sec. 698; Jones on Tel. & Tel. Companies (1 Ed.) secs. 83, 95; City of St. Paul v. Freddy, 90 N. W. 781; City of Marshfield v. Tel. Co., 78 N. W. (Wis.) 735. (2) Municipal grants and privileges are always construed most strongly against the grantee and in favor of the public. Kavanaugh v. St. Louis, 220 Mo. 496; Memphis E., L. & P. Co. v. Memphis, 196 S. W. 1113. (3) Defendant had no right to place their wires and poles or other fixtures in the city without first obtaining the consent of the municipal authorities thereof. R. S. 1909, sec. 3326. (a) A village has the authority granted to it by the Legislature to pass ordinances, opening, clearing and regulating streets and alleys. R. S. 1909, sec. 9436. (b) The power "to regulate" gives the power to permit use by a telephone company for its poles and wires. State ex rel. v. Murphy, 134 Mo. 548, 561; Schopp v. St. Louis, 117 Mo. 136. (4) The corporate power of a village is vested in a board of trustees, which consists of five members, and they are required by statute to keep a journal of their proceedings, and the acts of such board can only be shown by such journal entries. R. S. 1909, secs. 9431, 9435; Stewart v. City of Clinton, 79 Mo. 603; Dillon on Municipal Corporations (4 Ed.) secs. 259, 274, 310; Lebanon Light Co. v. City of Lebanon, 163 Mo. 254, 259. Under Section 3326 the consent must be obtained from the municipal authorities of the city. The municipal authorities is a board of trustees, and not the mayor. Outside of these statutes a mayor or chairman of a board has no authority to bind the city, and the city is not estopped by his acts. 28 Cyc. 465e, 463b, 647b; Lockwood v. Wabash Railroad, 122 Mo. 95. (5) Those who deal with the officers of a municipal corporation are conclusively presumed to know the law, and that these public agents are authorized to act only strictly within the sphere limited and prescribed by law and outside of which they are utterly powerless to act,

294 Mo.—40

and any transaction had by such officers outside of such authority do not and cannot bind the principals, because persons dealing with such officers are conclusively presumed to know the authority which the law confers on such officers. Mister v. Kansas City, 18 Mo. App. 217; Cheeney v. Brookfield, 60 Mo. 53; Lebanon Light Co. v. City of Lebanon, 163 Mo. 254; City of Unionville v. Martin, 95 Mo. App. 28; Muttens v. Kansas City, 268 Mo. 444. (6) The matters and things pleaded in defendant's answer constitute no defense whatever. A city has a duel capacity: governmental or public, and proprietary. In applying the doctrine of estoppel, distinction must be made between property held for strictly public purposes as for streets, parks, commons and the like, and property held by the corporation in its private capacity. The grant to use the streets of a city to a telephone company is a grant by the State through the city as its agent; is a governmental act for public benefit and the doctrine of estoppel does not apply to a city in a governmental capacity; it only applies to matters and things done or property held in its private character. 2 Dillon on Municipal Corporations (4 Ed.) sec. 675; Dunklin County v. Chouteau, 120 Mo. 577, 595; State ex rel. v. Light & Dev. Co., 246 Mo. 648; Behrman v. St. Louis, 273 Mo. 518. (7) The learned trial judge based his decision in this case dissolving the injunction on the theory that plaintiff is estopped. The court was led into error by the line of cases holding that the Statute of Limitations, estoppel *in pais* and laches, apply to counties, cities and municipalities when acting in their private or proprietary capacity, and failed to observe the distinction between the acts of a city in such capacity and when acting in its public or governmental capacity. 28 Cyc. 24; Snouffer v. Cedar Rapids City Railroad, 92 N. W. 79, 86; Bangor v. Bay City Traction Co., 110 N. W. 490; State ex rel. v. Railroad Co., 140 Mo. 539, 558; Wheeler v. Poplar Bluff, 149 Mo. 36, 47; Savage v. Springfield, 83 Mo. App. 323; Philadelphia Mortgage Co. v. City of Omaha, 88 N. W. 523.

*W. N. Evans & O. L. Haydon* for respondents.

The application of the defendant to the town of Mountain View and its acceptance by the chairman of the board, who says he discussed it with the other members, was an invitation to the defendant to proceed with the work of building and establishing its telephone system in Mountain View. Defendant has put up and now maintains about 300 miles of wires and poles which is valued at $50 per mile, or $15,000, to say nothing of the cost and expense of the central or exchange office in Mountain View and of the many poles and wires of the patrons inside of the incorporated town. The doctrine announced in the case of Town of Montevallo v. School District, 268 Mo. 217, and St. Joseph v. Railroad, 268 Mo. 47, settles this case.

ELDER, J.—This case has been certified to this court by the Springfield Court of Appeals by reason of an alleged conflict between the opinion rendered herein by the latter court and an opinion heretofore rendered by Division One of this court in the case of Holland Realty & Power Co. v. City of St. Louis, 221 S. W. 51.

The opinion of the Springfield Court of Appeals, written by FARRINGTON, J., and fairly setting forth the facts involved, is as follows (224 S. W. 155):

"Plaintiff, a city of the fourth class, filed its petition in the circuit court seeking to enjoin defendant from erecting its poles, wires, etc., on and along the streets and alleys of the city. A temporary restraining order was issued. The venue was changed from Howell to Texas County, and on trial in the latter county the temporary injunction was dissolved, and plaintiff's bill dismissed, and plaintiff appealed.

"It is alleged that the defendant without authority entered and trespassed upon the streets and alleys of the city, dug and is digging holes, erecting poles, stringing wires, obstructing the streets, alleys, and sidewalks to the great and irreparable damage of plaintiff; that

plaintiff has notified defendant to desist from doing these things, but defendant continues in disregard of the notice.

"Defendant's answer avers that on March 1, 1910, it presented a petition or application to the chairman and members of the board of trustees of the then town of Mountain View, asking for a permit to establish, construct, maintain and operate a central office, and such poles and wires as might be necessary to carry on a telephone communication between the subscribers and the residents and business houses of the town; that soon after presenting this petition it was returned duly signed by the chairman of the board of trustees, and that said chairman advised defendant that the permit prayed for had been granted by the board of trustees, and as evidence thereof the chairman of said board had signed said petition or application; that relying on what defendant considered as a proper authority and permit it proceeded at once to establish, construct, maintain and operate a central office in the town of Mountain View, and erected poles, and strung wires, and did all other things necessary in the construction and operation of a telephone system, and operated said telephone system in said town with the full knowledge, consent and acquiescence of the town officials and the inhabitants, and to their satisfaction until in the year 1916. That in 1916 an electric light plant was established in the then city of Mountain View, and that the wires of the light plant were in many instances strung in such close proximity to the telephone wires that the telephone service was impaired, and that not until then was there any complaint of consequence; that in order to improve the service rendered after the installation of the light plant, defendant attempted to erect its poles and wires on the opposite side of the street from the light poles and wires; and that defendant frequently requested the city to define its duties and rights by ordinance, but that this the said city failed and neglected to do; that the town and thereafter the city regularly levied and collected taxes from defendant.

That by reason of the knowledge of plaintiff that defendant had erected and was maintaining its telephone system in the town and afterwards the city for a period of nearly ten years, and that the town and thereafter the city officials, and inhabitants generally, were subscribers and patrons, and that plaintiff city had permitted and acquiesced in defendant expending large sums of money in installing and maintaining its telephone system for such a long period of time and having levied and collected taxes from defendant and having attempted in the first instance to give defendant a permit to enter, that because of these things plaintiff is estopped from denying the right of defendant to maintain its telephone system in said city, and to re-erect or move its poles and wires for the necessary maintenance of its telephone system, and that unless defendant is permitted to continue the erection of the necessary poles and wires in said city, it will suffer irreparable injury and damage.

"The record shows that the defendant telephone company is an unincorporated association of farmers, in which a number of different neighborhoods are represented. The subscribers of each neighborhood designated one of their number as a director, and the directors of the various neighborhoods constituted the board that managed and conducted the telephone system. Each neighborhood line had a set of officers, and these looked after the collection of dues on their line. A patron in town was not a member of the association, but such patron built his own line, furnishing poles and wire, bought his telephone, and paid so much per month for connection and service. The board of managers controlled the location of poles and construction in general outside the city, and also had control and supervision of the exchange in the city. Each country line approached the exchange from a certain alley, some from the east and some from the west. It seems that there was no supervision by the company or the city of the construction of lines in the city, and as a consequence there was no uniformity in the size or length of poles,

or in the manner of construction. As each town patron was required to furnish his own supplies, and use his own discretion as to how and where he constructed his line, it sometimes happened that two sets of poles were on the same side of the street. The record discloses that the lines in town were constructed in a haphazard fashion without supervision, and naturally resulted in unsightly appearances, and perhaps in some instances to actual damage to the city's streets, and inconvenience to the general public.

"It appears that when the chairman and board of trustees of the original town gave the permit for the telephone company to enter, there was no action by the board as such, and no record of any kind made concerning the permit. The chairman of the board merely saw the members at their place of business or on the streets and explained the matter of the application, and each one, so far at least as they were consulted, was willing for the company to enter the town. The chairman after consulting with the individual members signed the application and returned it to the telephone company, and this application signed in this fashion by the chairman is all authority that the telephone company ever had for entering the town. After the service got bad on account of the light plant construction, and complaints against the telephone company began to get serious, there was considerable negotiation and efforts made to settle the trouble. The telephone company drafted an ordinance acceptable to it, and submitted the same to the mayor and board of aldermen. This ordinance was not satisfactory, and was rejected. The city in turn submitted a proposed ordinance which would be acceptable to it, and the telephone company 'rejected' this ordinance. Service was getting no better, and 'feeling' grew hostile. Some of defendant's agents were arrested for undertaking to set poles on the streets. The trouble finally resulted in this suit to enjoin.

"The only question here is the one of estoppel. Defendant concedes in effect that it has no franchise; but

it urges that the course of conduct of the town and afterwards the city towards it estops the city to prosecute this cause. The evidence shows that when this cause was commenced the telephone company had been operating in the plaintiff city for nearly ten years under the so-called permit given by the town officers in the manner above described. Something like 300 miles of telephone lines had been constructed at an outlay of several thousand dollars. The defendant telephone company does not seem to have been organized in accordance with the provisions of Article 6, Chapter 33, Revised Statutes 1909, regulating the organization and conduct of telegraph and telephone companies; but the telephone company could not by failure to organize under that statute acquire any right to enter plaintiff city without its consent. Section 3326, Revised Statutes 1909, among other things, provides that any telephone company desiring to place its wires, poles and other fixtures in any city shall first obtain consent from said city through the municipal authorities thereof. Section 9436, Revised Statutes 1909, gives the board of trustees of an incorporated town a number of powers, among which is the power to regulate the streets and alleys, and to pass such other ordinances for the regulation of the town as the board shall deem necessary, not repugnant to and contrary to the laws of the State. Defendant does not contend that plaintiff city has no authority or power to regulate and control the place or position of poles in its streets, and the manner of construction, etc., but it urges that the city under the circumstances ought not to be permitted, under its authority to regulate and control its streets and alleys, to, in effect, abate defendant and its properties as a nuisance within the city.

"Plaintiff city is proceeding on the theory that since the defendant company had no legal right in the first instance to enter the town, it has no more rights now than it had then, and that it, the city, can enjoin the defendant now, as well as the town might have done ten years ago. But this theory proceeds on another theory,

that the plea of estoppel under the facts here is not avaliable or will not lie against the city.

"The doctrine of equitable estoppel is not generally applicable to municipal corporations in matters pertaining to governmental functions. [Dunklin County v. Chouteau, 120 Mo. 577, 25 S. W. 553; State ex inf. v. Light Company, 246 Mo. 618, 152 S. W. 67.]

"When the doctrine of equitable estoppel is applied to municipal corporations in matters pertaining to governmental functions much caution is to be, and should be, observed. [St. Joseph v. Railroad, 268 Mo. l. c. 55, 186 S. W. 1080.] In this case the court said: 'Courts apply with much caution the doctrine of equitable estoppel to municipal corporations in matters pertaining to their governmental functions, and this is right. However, it will not do to say that the courts of this State never apply this rule of law to municipal corporations, as is seemingly urged by counsel for respondent. There are conditions under which the rule may be invoked as against municipal corporations.'

"In 3 Dillon on Municipal Corporations (5 Ed.) sec. 1194, discussing the question of estoppel as applicable to municipal corporations, the author says that there is no danger in recognizing the principle of *estoppel in pais* as applicable in exceptional cases, since this leaves the courts to decide the question, not by mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require. The Supreme Court in Town of Montevallo v. School District, 268 Mo. 217, 186 S. W. 1078, approves the principle laid down by Judge Dillon. It is not necessary to set out the facts in the case last cited. A reference thereto will show that the doctrine of equitable estoppel was applied to a municipal corporation. In that case the court says that the rights of corporations representing the public at large cannot be defeated by force of the Statute of Limitations, but that the principle of estoppel, where justice and right demand it, should be applied when necessary to prevent wrong and

injustice being done. A great many cases from our own and other jurisdictions are cited in support of this sensible and just rule.

"In Town of Montevallo v. School District, supra, REVELLE, J., speaking for the court says: 'While I recognize the general rule that estoppel cannot ordinarily be invoked against a municipal corporation, yet I think there is authority abundant to the effect that there may grow up in consequence of the acts of a municipal corporation rights of more persuasive force in the particular case than those of the public, and where justice requires it an equitable estoppel will be asserted even against such corporation.'

"Since this cause was submitted plaintiff has called our attention to Holland Realty & Power Co. v. City of St. Louis, 282 Mo. 180. This opinion was rendered by our Supreme Court on April 10, 1920. While there is much in that case to support plaintiff's contention that the plea of estoppel will not lie against it, yet as we construe it there is nothing therein that overrules the cases of St. Joseph v. Railroad and Town of Montevallo v. School District, supra, which we have cited, and on which we rely for the law.

"We do not deem it necessary to discuss further the point under consideration. It is certain that the principle of equitable estoppel may, in certain cases, be invoked in this State against municipal corporations in matters pertaining to governmental functions. And we are equally certain that the facts in the case at bar make it one of the exceptional cases where this principle should be applied. To say that the plaintiff city can restrain the defendant company from reconstructing or readjusting its lines in the city in order to avoid the trouble caused by the light plant, and in order to give service, would be equivalent to ousting defendant from the city. No community would indefinitely patronize a telephone system that failed to give substantial service. Defendant could not give substantial service without in some way eliminating the trouble caused by the lighting sys-

tem. We are not ruling that plaintiff city cannot regulate the manner in which defendant shall construct its telephone system. This right the city has, and defendant does not contend otherwise. Of course, regulate means what the word ordinarily implies, and does not mean to oust or destroy. There is no occasion, except from mere courtesy, for the city to submit its proposed regulatory ordinance to defendant for approval. The board of aldermen constitute the legislative body of the city, and all ordinances passed by that body, in the usual way, and within its legislative scope, constitute the ordinance law of the city. Plaintiff has the authority and should regulate the poles, and everything else connected with the construction of defendant's telephone system. If plaintiff had passed the ordinance it caused to be drafted and submitted to defendant, this case could not have existed.

"We think the learned chancellor was correct when he dissolved the temporary injunction, and dismissed plaintiff's bill, and the action and judgment therein is affirmed. *Bradley, J.,* concurs; *Sturgis, P. J.,* dissents, and deems the majority opinion in conflict with the opinion of the Supreme Court in Holland Realty & Power Co. v. City of St. Louis, 282 Mo. 180. The case is therefore certified to the Supreme Court."

I. As will be noted the conflict claimed revolves around the question of estoppel.

Holland Realty & Power Co. v. City of St. Louis, 282 Mo. 180, with which the opinion of the Court of Appeals is said to conflict, is to be differentiated from the case at bar. That case involved the right of the power company to enjoin the city of St. Louis and the members of its board of public improvements from cutting and removing a cable and wires used to convey currents of electricity under the surface of three alleys to certain adjoining buildings for the purpose of furnishing light to the tenants thereof. A cross-complaint was filed by the defendants asking a mandatory injunction to compel

the removal of the cable and wires. This relief was denied the defendants. In that respect the case is somewhat analogous to the instant suit. However, as found by this court, l. c. 187, the record there contained "nothing of allegation or evidence to show either knowledge by the city officials of the laying of the wires under the alleys when it was done, or how long before the city's demand for their removal these officials learned they were located therein." Here the answer of defendants alleges "that by reason of the knowledge of the plaintiff that defendants had erected and were maintaining poles and wires and operating a telephone system and central office in the town of Mountain View for a period of nearly ten years, and that the chairman of the said board of trustees and members of the city council were among the subscribers and patrons of defendant telephone system and permitted and acquiesced in the defendants expending large sums of money in the erection of poles and wires and establishing and maintaining a central office in said town for such a long period of time, and that by reason of the said town of Mountain View and city, as it is now designated, having levied and collected the taxes on the property of defendant association for many years during the time it was operated, the plaintiff is now estopped," etc. And the evidence here adduced tended to prove that defendants had operated in Mountain View since 1910; that they had erected about 300 miles of wire running into the city, valued at "not less than fifty dollars" a mile; that they had maintained a switch-board in the city; that taxes were assessed against them by the city; that the chairman and other members of the board of trustees of the village, and afterwards members of the board of aldermen of the city, were patrons of defendants; that for many years no objection was made to defendants' user of the streets and alleys of the city; and that ordinances defining defendants' rights and privileges with respect to using the streets and alleys had been presented to the city for passage by its board of aldermen, but that the

same had been rejected. Accordingly, there are here present elements of estoppel not found in the Holland Realty & Power Co. Case.

Furthermore, the principal contention involved and discussed in the Holland Case was the right of the plaintiff, as owner of abutting property, with the permission of the opposite abutters, to run and maintain electric wires under the alleys, without procuring the city's consent. The city, to sustain its position, relied upon Section 3367, Revised Statutes 1909, empowering electricity companies to lay conductors through streets and alleys "with the consent of the municipal authorities," and upon Section 9947, Revised Statutes 1909, authorizing cities to regulate by ordinance the laying of wires across or under streets and alleys. The real question presented related to the force and effect, under the particular circumstances, of an ordinance enacted by the city under the authority of the above mentioned sections, prohibiting the placing of wires or cables along or across streets or alleys except upon certain conditions; and it was only incidentally that the court adverted to the principle of estoppel, a defense which was not urged. Accordingly, the Holland Case cannot be held an apposite precedent for the suit under review, and the somewhat *obiter* expressions upon the subject of estoppel therein contained should not, under the facts before us, be held to be binding upon the Court of Appeals.

II.   The Court of Appeals squarely bottoms its opinion upon the cases of City of St. Joseph v. St. Joseph Terminal Railroad Company, 268 Mo. 47, and Town of Montevallo v. School District, 268 Mo. 217, both decisions by this court in banc. In this we think it was correct.

The St. Joseph Case was an action in ejectment and to enjoin the railroad company from obstructing a street. Neighboring streets had been vacated by an ordinance enacted by the city. The street in question was not improved and had been practically abandoned. After the

passage of the vacating ordinance, the railroad company, with the knowledge of the city's officers, constructed terminals across the street in question, costing upwards of a half million dollars. It was held that the city was estopped to recover, GRAVES, J. saying, at page 56:

"The city stood by and encouraged the defendant in the expenditure of more than one-half million dollars, all to the city's benefit and upbuilding. The city stood silently by until this property was mortgaged to secure its bonds, and until those bonds were in the hands of innocent parties. For the city to win would be to destroy the security for these bonds. To permit the city by a recovery in this suit to destroy defendant's valuable property is inequitable in the strongest and strictest sense. The public rights should not be allowed to destory vast private rights under the peculiar facts we have here. There are many cases where public rights, through the doctrine of equitable estoppel, have been forced to give way to the more equitable rights of private parties."

The Montevallo Case was a suit to determine title to the public square in the town of Montevallo. The tract had been dedicated in 1866 to the town "for public use forever." In 1886 the board of trustees of the town ceded the land to the school district for school purposes. The school district erected a school building thereon costing several thousand dollars. Without protest from anyone the property was thereafter maintained and used for school purposes. This court affirmed a judgment declaring the school district to be the owner of the land as long as used for school purposes, with the reversionary fee in the town of Montevallo when the school district ceased to use the land for school purposes. It was held that the doctrine of estoppel was applicable.

And so in the case under review the evidence tends to show that in 1910 the chairman of the board of trustees of the then village of Mountain View, after consulting with and obtaining the authorization of the re-

maining members of the board, signed the application of defendants for the privilege of constructing and maintaining its telephone system in the village. Shortly thereafter defendants began the erection of poles and wires, established a switch-board, connected up its lines, and eventually had 56 city subscribers, including city officials, and operated 27 rural lines running from the city to the country. All of this proceeded without complaint or interference from the officers of the city until sometime early in 1919 when a complaint was filed by the city with the Public Service Commission. This complaint was dismissed by the Commission without prejudice, the Commission holding that the question of the right of defendants to use the streets and alleys of the city was a matter for judicial determination. As we gather from the record the underlying cause of the complaint made was the interference with telephone service occasioned by the contact with the wires of defendants of the current of high voltage electric light wires which had been erected in close proximity to the wires and poles of defendants. In the meantime, defendants, with the evident knowledge of the officials of the city, had maintained a central office in the city, had expended many thousands of dollars in constructing and extending its system, had been assessed by the city for taxes, and to all intents and purposes had operated as though granted a valid permit or franchise. To perpetually enjoin it from further proceeding with the work of erecting, re-erecting, changing, and extending its lines as necessity may require would result in an injustice.

Under all the circumstances of the case we are of the opinion, and so hold, that the Court of Appeals properly invoked the rule of estoppel. And by its invocation no irreparable harm will be done plaintiff. As well suggested, it has the authority to regulate the matters complained of. Section 9375, Revised Statutes 1909 (now Sec. 8473, R. S. 1919) empowers the board of aldermen to prohibit and prevent encroachments into and upon the streets, alleys and sidewalks, to provide for the removal

of obstructions from the sidewalks, curbstones, gutters and crosswalks, to regulate the erection of telephone poles, and to regulate the making of excavations in the sidewalks, streets and alleys. By following such course the practices complained of can be, and could have been, controlled. Plaintiff has an adequate remedy other than through the extraordinary writ of injunction. As said in 22 Cyc. 776, ''Where the complainant has an adequate means of redress in his own hands, he is not entitled to an injunction.'' And as held in People's Railway Co. v. Grand Avenue Railway Co., 149 Mo. l. c. 253, where a particular proceeding to enforce a right is prescribed by statute, ''the statutory remedy, if adequate, and no other, must be pursued.''

From what has been said it follows that the action of the circuit court in dismissing plaintiff's bill and dissolving the temporary injunction theretofore granted should be affirmed. It is so ordered. *Graves* and *James T. Blair, JJ.,* concur.