STATE EX REL. IONE N. RUSSELL, Administratrix d. b. n. c. t. a., of the Estate of Alexander R. Russell, Relatrix, v. FRED E. MUELLER, Judge of the Circuit Court of St. Louis County, Division No. 3.—60 S. W. (2d) 48.

Division Two, April 20, 1933.

*S. A. Boggiano, E. McD. Stevens* and *Taylor R. Young* for relatrix.

*Randolph Laughlin* for respondent.

TIPTON, J.—This is an original proceeding in prohibition in the St. Louis Court of Appeals. From a decision written by Commissioner BENNICK and adopted by a majority of the judges of that court the preliminary rule was discharged. Judge NIPPER of that

court dissented from the opinion because he deemed that the opinion was in conflict with an opinion of the Kansas City Court of Appeals in the case of State ex rel. v. Kennedy, 73 Mo. App. 384, and an opinion by this court in State ex rel. v. Kennedy, 163 Mo. 510, 63 S. W. 678.

The opinion written by Judge BENNICK, for the St. Louis Court of Appeals so clearly presents the reasons for the conclusions, which we think to be sound, that we adopt his language as follows:

"This is an original proceeding in prohibition, brought at the relation of Ione N. Russell, administratrix d. b. n. c. t. a. of the estate of Alexander R. Russell, deceased, against Hon. Fred E. Mueller, Judge of the Circuit Court of St. Louis County, Mo., Division No. 3, the purpose of the proceeding being to have respondent prohibited from further assuming or exercising jurisdiction in a certain cause pending in his court on appeal from the probate court of St. Louis County.

"█ The controversy grows out of certain phases of the administration of the estate in question. It appears that relatrix, Ione N. Russell, the widow of the deceased, was the original executrix of his estate, and that she served in that capacity until March 17, 1930, when she was removed by the probate court, pursuant to an order sustaining the petition of Randolph Laughlin, a creditor of the estate, charging that she had absented herself from the State for a space of four months, and had become a nonresident. On the same date, it was ordered by the court that Edward W. Terry, the public administrator of St. Louis County, be appointed administrator d. b. n. c. t. a., whereupon he took over the estate, and continued in charge thereof for some eleven months thereafter. While there is some little controversy between the parties as to whether Terry had been appointed in his official, or in his individual, capacity, we think the fact that he was designated and described in the order of appointment as the public administrator, and that he admittedly took charge of the estate without giving bond, warrants the conclusion that he was acting in his official, rather than in his individual, status. [In re White's Estate, 221 Mo. App. 984, 295 S. W. 504.]

"Immediately upon the entry of the order for her removal, relatrix filed her settlement as executrix. On August 11, 1930, Laughlin's claim as creditor was allowed against the estate, in the sum of $123,-000, from which allowance Terry appealed to the Circuit Court of St. Louis County, where the matter is now pending. On September 17, 1930, relatrix filed her final settlement to the date of her removal, which was approved by the probate court; and relatrix was ordered to turn over the cash balance in her hands, and the books and papers of the decedent, to Terry as her successor. It is admitted that the latter order was never complied with by the rela-

trix, her excuse being that no demand for compliance was ever made upon her by Terry.

"Following the approval of the final settlement of relatrix, proceedings were instituted by Laughlin to discover assets, and a citation was issued to relatrix in connection therewith. All of the several matters that transpired in the probate court pursuant to the proceeding to discover assets are of no importance upon the issues determinative of this proceeding, save as they may serve to disclose the basis for Laughlin's subsequent charges of misconduct on the part of relatrix as executrix.

"It appears that on or about October 25, 1930, a motion was filed in the probate court by a counsel representing certain interests in the estate, charging Terry with misconduct, and praying his removal as administrator of the estate. On December 22, 1930, after the hearing on the citation and motion to remove him had been continued, Terry filed his resignation; and on February 10, 1931, upon the filing of proof of the publication of his intention to resign, Terry's resignation was accepted by the court, he was ordered to make settlement to the date of his resignation, and relatrix was thereupon appointed administratrix d. b. n. c. t. a. The order further shows that on the same day relatrix filed her bond in the sum of $20,000, which was duly examined and approved by the court.

"On February 12, 1931, Laughlin, as a creditor of the estate, prayed for and was granted an appeal to the circuit court of St. Louis County from the orders of the probate court accepting Terry's resignation, and appointing relatrix as his successor.

"The cause on appeal was assigned to Division No. 2 of the circuit court, wherein relatrix, on March 20, 1931, filed her application for a change of venue, upon the ground that the judge presiding in that division was prejudiced against her, and in favor of the opposite party. On April 10, 1931, said application for change of venue was denied, the theory of the court being (so it is urged in respondent's brief), that relatrix was a mere interloper, the controversy on appeal being purely one between Laughlin and Terry.

"On April 15, 1931, when the cause was docketed for the second time, relatrix filed her motion to dismiss the appeal on the ground that no right of appeal lay from the order of the probate court, either accepting Terry's resignation, or appointing relatrix as his successor. On April 20, 1931, the court overruled said motion to dismiss; and then, reversing its former ruling that relatrix was not a party to the appeal, of its own motion it vacated and set aside its former order denying a change of venue, reinstated the application of relatrix and sustained the same, and ordered the cause transferred to Division No. 3, over which respondent presides.

"On April 21, 1931, respondent set the cause down for trial, and

after the taking of certain testimony, which was adduced at the instance of Laughlin alone, he ordered the cause continued until a later date, when additional testimony might be taken, and the cause finally submitted. Laughlin's evidence, which was received subject to the right of relatrix to dispute it, detailed the facts in regard to the several proceedings in the probate court about as we have heretofore stated them; and, in addition, Laughlin offered to prove that the proceedings had in the probate court on February 10, 1931, when Terry's resignation was accepted and relatrix appointed as his successor, were pursuant to a fraudulent conspiracy between Terry and relatrix, and that relatrix had been guilty of a number of specific acts of misconduct in her original capacity of executrix.

"Laughlin's offer of proof was objected to by relatrix, and the return discloses that the objection was sustained by respondent upon the ground that, if Laughlin desired to have relatrix removed as administratrix, his remedy was to file a motion in the probate court asking for her removal, and then to appeal from the order of the court refusing it. That the court so ruled is not denied in the reply filed by relatrix, and the cause having been submitted on the pleadings, we are entitled to assume for the purposes at hand that the only matter over which respondent is now threatening to exercise jurisdiction is in the determination of the propriety of the first order appealed from, which goes to the question of whether or not Terry had the right to resign, and the probate court the right to accept his resignation. In other words, respondent seems already to have held that the order of the probate court appointing relatrix was not appealable; and, therefore, whether his ruling was right or wrong, relatrix has no cause for complaint about it, and there is no threatened exercise of jurisdiction in connection with that feature of the appeal so as to entitle her to ask to have the same prohibited.

"Now there is and can be no question raised about the right of the ordinary executor or administrator to resign, for that right is expressly granted by statute, the same being Sections 44 and 45, Revised Statutes 1929. These sections provide that if any executor or administrator shall publish due notice of his intention to resign, and if the court, on proof of such publication, and for good cause shown, shall believe that he should be permitted to resign, it shall so order, and such person shall then surrender his letters, and his power from that time shall cease.

"But the question at issue in this proceeding is whether those sections are equally applicable to the public administrator, so as to have entitled Terry (who was administering the estate in his capacity of public administrator, as we have heretofore shown) to have resigned, and the probate court to have accepted his resignation. From the answer to that question, the propriety of the issuance of our writ is in large part to be determined, since counsel for respondent

argues that the order accepting Terry's resignation was appealable, being in effect a revocation of letters (though in the particular case there was no authority for it), while relatrix insists that even though Terry had the right to resign, and the probate court the right to accept his resignation, yet the order was not appealable, as not being within the purview and contemplation of the statutes granting the right of appeal to the circuit court from the final judgment and orders of the probate court.

"■ Of course, the very nature of the public administrator's office serves to differentiate certain features of his administration of an estate from that of an individual administrator or executor, yet in all material respects the duties and liabilities are the same. Recognizing this fact, the Legislature has provided by Section 300, Revised Statutes 1929, that in addition to the provisions of the law which in their very nature can apply to the public administrator alone, he and his sureties shall have the same powers as are conferred upon, and be subject to the same duties, penalties, provisions, and proceedings as are enjoined upon, or authorized against, executors and administrators by articles 1 to 13 of the administration chapter, so far as the same may be applicable. Since the power to tender his resignation, and to have the same accepted by the court upon proof of due publication of intention and for good cause shown, is expressly conferred, upon an executor or administrator by Sections 44 and 45, Revised Statutes 1929, it would logically seem to follow from Section 300, Revised Statutes 1929, that the identical power is conferred upon the public administrator, subject, of course, to the identical conditions.

"The only expression that we know of in the books to the contrary is to be found in the case of State ex rel. v. Kennedy, 73 Mo. App. 384, an opinion of the Kansas City Court of Appeals, which is strongly relied upon by counsel for respondent. In that case, the court expressed the view that what are now Sections 44 and 45, Revised Statutes 1929, pertaining to the resignation of administrators, do not apply to public administrators; and then it went on to say that a public administrator has no authority to refuse to enter upon, or to continue, an administration which by law should be administered by him while he holds the office; that, if he retains the office, he must perform its duties as any other official in whom trust and confidence is reposed; that if he could retain the office, and yet have power to resign at his own option from the administration of any particular estate, it would give him the right, instead of the law itself, to say what class of estates should be administered by the public administrator; and that he ought not to be allowed to retain the office, and yet choose for himself which of the duties of that office he would perform.

"■■ As a general proposition of law, we are in complete agreement with the reasoning of the court in the Kennedy opinion. Most certainly, the public administrator should be required to discharge the duties of his office; and there can be no argument about the fact that he should not be permitted to choose only the lucrative estates, and reject those that offer no hope of pecuniary compensation for his labors. Nor should he be permitted to resign at his own option when once the law has made it incumbent upon him to undertake the administration of an estate.

"■ It must be borne in mind, however, that as the statutes are written, no administrator, whether he be a public or a private administrator, is permitted to resign at his own option. Rather, the option, if such it may be called, rests with the court, in that even after proof of due publication of his intention is made, the resignation may nevertheless not be accepted by the court except for good cause shown. [State ex rel. v. Green (Mo. App.), 17 S. W. (2d) 629.] Now whatever would be good cause for the giving and acceptance of the resignation of a private administrator might be equally good cause for the giving and acceptance of the resignation of the public administrator. In other words, in just such a case as this, where the administration of the estate has been attended with countless disputes and controversies, and where the conduct of his administration was challenged, whether rightfully or wrongfully we do not know, by certain interests in the estate, culminating in the filing of a petition to remove him, why should the public administrator be compelled at all hazards to continue his administration, and why should the probate court be precluded from accepting his resignation, and thus adjusting certain of the controversies, merely because the administrator happens to be the incumbent in a public office? To our minds there can be no valid reason advanced why the public administrator should not be permitted to resign for good cause shown to the court; we think the statutes are reasonably to be construed as affording him that right upon equal terms with a private administrator, and we shall so hold, unless the force of the Kennedy Case is such as to forestall that conclusion.

"Now in the Kennedy Case, the only point before the court for its decision was whether the public administrator, who had resigned his office, was thereupon required to turn over the assets in his hands to his successor. The determination of that question required the interpretation of what is now Section 301, Revised Statutes 1929, which provides that when a public administrator has been appointed to take charge of an estate he shall continue the administration until finally settled. unless he resigns, dies, is removed for cause, or is discharged in the ordinary course of law. The court held that when the statute is given its true meaning, the public administrator continues to administer estates in his hands, even after the expiration

of his term of office, unless he dies, resigns his office, is removed, or is otherwise discharged by law; and that the word "resigns," as used in that statute, has reference solely to the resignation of his office, and not to the resignation of his appointment to take charge of a particular estate.

"We think the court correctly construed the statute; and indeed, the construction so given it has had the express approval of the Supreme Court. [State ex rel. v. Kennedy, 163 Mo. 510, 63 S. W. 678.] The statute was evidently enacted for the prime purpose of settling the question of whether a public administrator, who has taken charge of an estate during his tenure of office, shall complete the administration thereof after his term of office has expired. The court very properly decided the question before it; but it had no question before it involving the right of the public administrator, during his tenure of office, to submit, and the probate court to accept, his resignation from the administration of a particular estate, upon good cause shown. Consequently, all that the court said upon that question was *obiter,* and in so far as the views expressed by the court in that regard are in conflict with the conclusions reached herein, we feel at liberty to disregard them, and to determine the case before us in the light of the legislative intent expressed throughout the administration law as we ourselves construe it. [Lyons v. National Surety Co., 243 Mo. 607, 147 S. W. 778; City of Mountain View v. Farmers' Telephone Exchange Co., 294 Mo. 623, 243 S. W. 153.]

"We conclude, therefore, that Terry had the right to submit his resignation, and the probate court the right to accept it, providing proof of the giving of due publication of his intention was made, and good cause for the resignation was shown, to the court.

"With this in mind, the only question left for our determination is whether the order of the probate court accepting Terry's resignation was appealable.

"There are two statutes which authorize appeals from the probate court to the circuit court, the first being Section 284, Revised Statutes 1929, and the second, Section 1938, Revised Statutes 1929. The first section designates fourteen specific instances in which an appeal may be allowed, and concludes with a fifteenth general provision, which authorizes appeals in all other cases where there shall be a final decision of any matter arising under the provisions of articles 1 to 13, inclusive, of the administration chapter. The second section provides that the circuit court shall have appellate jurisdiction from the judgment and orders of the probate court in all cases not expressly prohibited by law.

"■■ We think the latter general statute, and the fifteenth subdivision of the prior statute, warrant the appeal in this case, especially in view of the fact that appeals are favored, and statutes granting that right are to be liberally construed. [State ex rel. v.

Wurdeman, 286 Mo. 153, 227 S. W. 64.] The acceptance of Terry's resignation was certainly a matter arising under the provisions of articles 1 to 13, and an appeal from such an order is not expressly prohibited by law. Moreover, it was a final order, so far as the question of Terry's continuance in office was concerned, since it terminated his authority and duties, except for the preservation of the estate, until the assets could be delivered to his successor. It was Laughlin's desire that Terry personally should continue the administration of the estate, and how better could he have questioned the court's right to accept his resignation than by an appeal from the court's order of acceptance of it? An appeal from the order accepting his final settlement would not have served the purpose, for Laughlin does not question Terry's handling of the assets of the estate; nor would a successful appeal from an order refusing to remove relatrix for her unfitness have sufficed to restore Terry to office, provided his resignation was lawfully accepted. It is true that Laughlin might perhaps have filed a motion to have had relatrix removed upon the ground that her appointment was void, conditioned upon the premise that Terry had had no right to resign in the first instance, but the method he chose to question the court's order seems to us to have been no less appropriate than that.

"■ Then too, it must be borne in mind that the acceptance of Terry's resignation called for a judicial determination of whether the statutory requirements looking thereto had been met. In other words, the probate court was called upon to find both that due notice of his intention to resign had been given, and that good cause existed for his resignation. These were questions both of law and of fact, which the complaining party should have the right to have reviewed on appeal.

"We conclude, therefore, that, notwithstanding Terry's right to have resigned, respondent has derived jurisdiction to determine the question *de novo* of whether his resignation was duly accepted by the court; and such being true, it follows that our preliminary rule in prohibition was improvidently issued, and should be quashed. The commissioner so recommends.''

The preliminary rule in prohibition heretofore issued by the St. Louis Court of Appeals is, accordingly quashed. All concur.