Paul K. BALLEW, Appellant,

v.

James P. AYLWARD, Jr., Respondent.

No. WD 48143.

Missouri Court of Appeals,
Western District.

June 28, 1994.

As Modified July 28, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Max D. Goracke, Kansas City, for appel-
lant.

Janice Earlene Farr, Kansas City, for re-
spondent.

Before SMART, P.J., and KENNEDY and
ULRICH, JJ.

KENNEDY, Judge.

This is an appeal by Paul K. Ballew from an adverse summary judgment in his suit for damages against Jackson County Public Administrator James P. Aylward, Jr. Ballew claims Aylward was negligent in the performance of his duties as conservator of Ballew's estate during a period when Ballew was incapacitated.

Ballew became ill on April 7, 1989, and was taken from his home to the hospital. He was in one hospital, then another, and after his release from the second hospital on September 9, he spent some period of time in a nursing home. At the time he became ill, he had two adjoining houses, one of them his residence at 5613 East 23rd Street in Kansas City, and the other at 5611 East 23rd Street. The latter house was unoccupied, but had been occupied by renters until the month before Ballew entered the hospital. At the time of Ballew's deposition, on October 7, 1991, he lived in a rental apartment. He had sold the house he had occupied as his residence. The other house was "sitting."

Aylward was appointed by the Jackson County Probate Court on May 16, 1989, as Ballew's conservator, to serve for a one-year period. Ballew at the time of Aylward's appointment was in the hospital. The order appointing Aylward makes reference to Chapter 208, which provides for payment of state welfare benefits to a conservator. Aylward proceeded to make application for welfare benefits and to receive the welfare payments in Ballew's behalf. The order of appointment, however, does not purport to relieve the conservator of any authority or responsibility as Ballew's conservator.

Ballew alleges that Aylward breached his duty as conservator in the following particu-

lars: failing to terminate utility services at the vacant residences; failing to take possession of and protect Ballew's personal property; failing to keep Ballew's residences in "tenable" repair; failing to account for certain Supplemental Income Security Checks; failing to obtain an abatement on Ballew's property taxes; failing to rent or lease either of the residences; failing to procure insurance on Ballew's residences; and by failing to inventory Ballew's estate and file a Final Settlement and Accounting.

Aylward's motion for summary judgment alleged two grounds—first, that Aylward was shielded from liability by the doctrine of official immunity, and, second, that there was, in any event, no damage to Ballew resulting from any breach of Aylward's duties as Ballew's conservator. The trial court granted the summary judgment without specifying the ground or grounds therefor.

We construe this lawsuit as a claim on the public administrator's bond. § 473.730, RSMo 1993. The caption of the petition names as a defendant "John Doe Bonding Company." The petition alleges that defendant "John Doe Bonding Company" is "expected to be" the surety on the public administrator's bond, "but at the time of filing was unknown to plaintiff." No surety was ever made a party to the lawsuit. *Miller v. Owsley*, 422 S.W.2d 39, 41 (Mo. banc 1967), *City of Gallatin ex rel. Dixon v. Murphy*, 217 S.W.2d 400, 404 (Mo.App.1949).[1]

Defendant maintains the public administrator is protected by the doctrine of official immunity even from suit upon his bond. To this proposition we cannot accede.

1. In *Miller v. Owsley*, 422 S.W.2d 39 (Mo. banc 1967), the court said: "We have concluded that each' of the petitions herein alleges enough to state a claim and that the trial court erred in sustaining motions to dismiss. Each petition obviously is intended as a suit on the bond of defendant officers, although a copy of the bond is not attached and there is no allegation in the petition as to the penalty of the bond or any details as to its execution and approval. It does allege that defendant Travelers Insurance Company was surety on the official bond of the individual defendants and that the bond was execut-

ed in accordance with law. Whatever deficiencies there are in the details of the allegations with respect to the bond can and should be remedied by amendments in the trial court on remand of these cases. A copy of the bond should be attached and the allegations of the petition should recite the conduct and acts alleged to constitute violations of the faithful performance of the officers' duties and hence violations of the terms of the bond. Acts which do not constitute violations of the sheriff's duties should not be included.". *Id.* at 41.

In *State ex rel. Russell v. Mueller*, 332 Mo. 758, 60 S.W.2d 48 (1933), the court said: "Of course, the very nature of the public administrator's office serves to differentiate certain features of his administration of an estate from that of an individual administrator or executor, yet in all material respects the duties and liabilities are the same. Recognizing this fact, the legislature has provided by section 300, R.S.1929, [now section 473.-750, RSMo. 1986], that in addition to the provisions of the law which in their very nature can apply to the public administrator alone, he and his sureties shall have the same powers as are conferred upon, and be subject to the same duties, provisions and proceedings as are enjoined upon, or authorized against, executors and administrators by articles 1 to 13 of the administration chapter, so far as the same may be applicable." *Id.* 60 S.W.2d at 50.

If the public administrator were shielded by official immunity from liability on his bond, the bond called for by section 473.730, RSMo.1986, would furnish no protection for the estates entrusted to the public administrator. Not only would the public administrator be immune from suit, but the official's immunity would extend to and protect the surety from liability as well. *Integrated Resources Equity Corp. v. Fairbanks North Star Borough,* 799 P.2d 295, 302 (Alaska 1990), *Phelps v. Dawson,* 97 F.2d 339 (8th Cir.1938). That the bond is intended from the protection of the estates of which the public administrator is fiduciary is clear from the language of section 473.730, RSMo.1986.[2] The bond is required to be in an amount "necessary to secure such ... property in his hands or under his control as such administrator." See *Stobie v. Stobie,* 183 S.W.2d 609 (Mo.App.1944).

One of Ballew's charges of misfeasance against the conservator is that he failed to protect Ballew's two houses from damage, and that he failed to realize income from them by renting them. He alleges, and so testified on his deposition, that the houses had been damaged by vandals and thieves during the time Aylward was serving as conservator.

On May 11, 1989, when Ballew's niece filed an application for the appointment of a guardian and conservator for him, she listed his real estate at a value of $19,000. The conservator never filed an inventory and appraisement of the Ballew estate.

Aylward puts forward, as an excuse for not renting the property, that Ballew had no money with which to put the houses in tenantable condition. Aylward also testified he had made the decision not to rent out Ballew's real property because of the short duration of the ad litem appointment, and because of the problems inherent in his office acting as a landlord without funds.

The conservator's duties with respect to his ward's property are described in section 475.130.2, RSMo 1992, which is shown in the margin.[3]

While circumstances may be shown which justify Aylward's decisions with respect to the houses, *see In re Zeppenfeld's Estate,* 593 S.W.2d 890, 893 (Mo.App.1979), the record before the trial court and before us does not entitle him to judgment as a matter of law. Aylward knew Ballew had the real estate; one of his agents went to inspect it. He elected to leave it unoccupied and unattended, vulnerable to the depredations of vandals and thieves and of the elements. The record before us, as noted above, shows no probate court inventory or appraisal of the assets of

---

2. The court has not considered the effect of the 1993 amendment of section 473.730, which added subsection 2. That amendment became effective August 28, 1993, after all the events of the present case.

3. The conservator of the estate shall take possession of all of the protectee's real and personal property, and of rents, income, issue and profits therefrom, whether accruing before or after his appointment, and of the proceeds arising from the sale, mortgage, lease or exchange thereof.

Subject to such possession, the title to all such estate, and to the increment and proceeds thereof, is in the protectee and not in the conservator. Upon a showing that funds available or payable for the benefit of the protectee by any federal agency are being applied for the benefit of the protectee, or that such federal agency has refused to recognize the authority of the conservator to administer such funds, the court may waive, by order, the duty of the conservator to account therefor. § 475.130.2, RSMo 1992.

the estate, and shows no probate court proceedings at all with reference to the real estate. The fact Aylward's appointment was for one year and expired at the end of the year[4] does not, by itself, justify failing to rent the real estate or to attempt to rent it, for property of a disabled person cannot be rented for more than a year at a time. § 475.130.5(8), RSMo 1992. There is no evidence that the house adjoining the Ballew residence was uninhabitable (it had, in fact, been occupied by a tenant until March of 1989, just before Ballew's illness), and there is an indication, from the fact he lived in it, that Ballew's residence was tenantable.

We are of the opinion that the record presents a genuine and unresolved issue of fact as to the conservator's misfeasance in his stewardship of the real estate, and as to damage resulting to Ballew. Summary judgment was therefore erroneously entered. Rule 74.04; *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 378 (Mo. banc 1993). If the trial court, upon trial, had before it the evidence which it had before it on the motion for summary judgment, we do not say that we would not affirm a judgment for defendant. We are unable to say, on the other hand, that we would reverse a judgment for plaintiff in some amount. The evidence would have presented an issue calling for weighing of evidence, and of competing inferences, and for resolution by the trial court. In this condition of things, summary judgment is not appropriate.

Having determined, at least in the real estate aspect of the case, that the cause must be remanded for further proceedings, we do not go through the whole catalog of Ballew's charges against the public administrator to determine, piece by piece, if Aylward would be entitled to summary judgment on one or more of the allegations. We may in our discretion remand a case for trial on a limited number of issues, Rule 84.14; *Davis v.*

*J.C. Nichols Co.*, 761 S.W.2d 735, 737 (Mo. App.1988), but in our discretion we elect not to do so in this case.

We therefore reverse the summary judgment, and remand the same to the trial court for further proceedings.

All concur.

---

4. We find no express authority for the appointment of a conservator for a limited term. Section 475.083.1(6) recognizes the "expiration of an order appointing a guardian or conservator ad litem...." The same subsection recognizes court-ordered extensions of the appointment. A "guardian ad litem" is defined by section 475.-010(6) as "one appointed by a court, in which particular litigation is pending, to represent a minor, an incapacitated person, a disabled person, or an unborn person in that particular proceeding or as otherwise specified in this code." A "conservator ad litem" is not defined.