James C. WIRKEN, Conservator ad litem for the Estate of Helen Morrison, Respondent,

v.

Christopher R. MILLER, et al., Defendant,

Frank Murphy and Jackson County, MO, Appellant.

No. WD 55093.

Missouri Court of Appeals, Western District.

Oct. 20, 1998.

. Janice E. Farr, Kansas City, MO, for appellant.

Berry F. Laws, III, Kansas City, MO, for respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

SMART, Judge.

Frank J. Murphy was the Public Administrator of Jackson County at the time employees of the Public Administrator's office stole property belonging to the estate of Helen Morrison, for whom Murphy was acting as guardian and conservator. After the theft was discovered, Murphy filed an action against Christopher Miller, Scott Richards, Richard Ferling, C & D Hauling and Linda Kennedy on behalf of Ms. Morrison's estate, seeking discovery of assets and recovery of damages for conversion, fraud and conspiracy. Richards and Kennedy, who had been employees of the Public Administrator's office, conspired with other defendants to steal from the estate of Helen Morrison. After initiating the litigation, Murphy resigned as Public Administrator to take another position. His successor, Frances Rove, filed amended petitions, adding Murphy (in both his individual and official capacities) and Jackson County as defendants. Because of the potential for conflicts of interest, Ms. Rove petitioned the probate division of the circuit court to appoint a limited conservator ad litem for Ms. Morrison's estate. James C. Wirken was appointed conservator ad litem for the estate.

The parties eventually stipulated to the dismissal of Murphy in his individual capacity. The County agreed to indemnify Murphy, who remained a defendant in his official capacity. The probate court's adoption of the stipulation provided, *inter alia*, "Notwithstanding any alleged obligation of the County to indemnify Murphy under § 473.730, RSMo., the County has contractually agreed to indemnify Murphy for any judgment entered against Murphy in the above-captioned case, whether as former public administrator or public officer, in a personal capacity, or any other capacity." The order also stated that "Counsel for County and Murphy announced to the Court that if any judgment is entered against Murphy in any capacity, the County will pay such judgment."

The parties then entered into a settlement agreement whereby Jackson County on behalf of itself and Murphy agreed to pay Ms. Morrison's estate $500,000.00. The agreement contained the following language:

It is further understood and agreed that the parties will present to this Court the issue of whether Costs will be recovered against the Respondents in this action, and if so in what amount, and that in the event the Court orders any such costs to be paid by Respondents that such costs need not be paid until all appeals with regard thereto have been exhausted.

The parties sought the trial court's approval of the settlement. They filed a joint motion for the court to approve the settlement. In their motion, the parties requested that the Court "take up the remaining issue in the settlement, which provides for the Court to determine the issue of what costs can be properly taxed in this case and whether the protectee's estate or Respondents should be charged with such costs incurred by Petitioner and his attorneys." The court issued a judgment and order approving the settlement, finding it to be a fair and reasonable compromise of the disputed claims. The court authorized the attorneys for the estate to be paid from the settlement proceeds. On the matter of Wirken's compensation the court stated:

> Presently pending before the Court is the Application for Final Compensation to Special Conservator *ad litem*, James C. Wirken and The Wirken Group, P.C., and Petitioner's Motion and Suggestions in Support of Petitioner's Costs to be taxed against individual Defendants, former Public Administrator Frank J. Murphy and Jackson County, Missouri. The Court has taken such Motions under advisement and will enter an Order shortly hereafter on such Motions. Meanwhile, from the $68,-353.94 retained in Petitioner's attorney's trust account as set forth above, the Court hereby authorizes compensation to the Special Conservator *ad litem* in the amount of $25,000.00, to be paid from the settlement proceeds, which represents all or a portion of the Special Conservator *ad litem* fees which shall be awarded in this case. In the event that the Court determines that additional fees should be paid to the Special Conservator *ad litem*, such decision will be contained in the Court's Order on such Application for Final Compensation and Motion and Suggestions in Support of Petitioner's Costs.

Later, in an attempt to compute the final compensation for the Special Conservator ad litem, the court determined that Wirken had incurred a total of $40,996.25 in fees and $879.09 in expenses. The court determined that two-thirds of the $40,996.25, or $27,-330.83, was attributable to work performed as special conservator ad litem. Ms. Morri-son's estate was ordered to pay the remaining $13,665.42. The court ordered that Murphy and Jackson County pay the sum of $2,330.83 in fees and the $879.09 in expenses, in addition to the $25,000.00 already determined.

Murphy and Jackson County appeal.

■ A suit against Murphy, in his official capacity, is considered to be a suit against Jackson County. *Edwards v. McNeill*, 894 S.W.2d 678, 682 (Mo.App.1995) (citing *Gas Serv. Co. v. Morris*, 353 S.W.2d 645, 647–48 (Mo.1962)). The appellants contend that at no time was immunity waived and that there was no statutory provision allowing an assessment of costs. They further contend that there was no judgment on the merits against either of them and no agreement to pay costs.

## Sovereign Immunity

■ The appellants argue that because Jackson County is a subdivision of the State, *Baumli v. Howard County*, 660 S.W.2d 702, 705 (Mo. banc 1983), and because costs cannot be recovered from the State absent statutory authority, *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993), the costs of the action cannot be taxed against Jackson County or against Murphy acting in his official capacity as public administrator. The basis of the appellants' claim of sovereign immunity is expressed in § 537.600, RSMo 1994. That section provides in pertinent part:

> 1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; ...

The statute goes on to provide for two exceptions to the immunity rule, one related to the operation of motor vehicles, and the other related to public property constituting a dangerous condition. Section 537.600 restores only "[s]uch sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date...." At

common law the concept of "costs" did not exist. *Architectural Resources, Inc. v. Rakey,* 912 S.W.2d 676, 678 (Mo.App.1995). Costs are creatures of statute. The statutes that authorize recovery of costs are to be strictly construed. *Id.* at 678–79. Unless it is specifically authorized by statute or by agreement of the parties, an item is not taxable as a cost. *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 44 (Mo. banc 1976). Courts have no inherent power to make an award of costs. *Dorn–Chrysler Plymouth, Inc. v. Roderique,* 487 S.W.2d 48, 49 (Mo.App.1972).

Although it would appear that conservator ad litem fees are akin to attorney fees, which are not traditionally taxed as "costs," *State ex rel. Cain v. Mitchell,* 543 S.W.2d 785, 786 (Mo. banc 1976), fees for conservators ad litem are taxed as costs. Section 404.731.6, RSMo 1994 provides:

> If a court appoints a guardian or conservator ad litem for the principal, the court may, by order entered in the proceeding, provide reasonable compensation and reimbursement for expenses for the guardian or conservator ad litem and, in appropriate cases, allow the payment out of the estate of the principal or enter a judgment for the amount as costs against some other person who is a party to the proceeding and whose conduct is determined by the court as giving rise to the necessity for the appointment of the guardian or conservator ad litem.

An award of costs is provided for by § 472.040, which states:

> In all suits and other proceedings in the probate division of the circuit court, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law. Whenever costs are given against executors and administrators, the estate shall pay the costs. Parties presenting claims against estates, for the same causes and in the same manner, may be ruled to give security for costs, as is provided in practice in civil cases.

Section 475.020 provides, "The provisions of chapter 472, RSMo, unless therein restricted to decedents' estates, apply to guardianships and conservatorships." Consequently, § 472.040 is applicable in this case.

Appellants argue that the phrase "except in those cases in which a different provision is made by law" in § 472.040 absolves them from liability for costs. We disagree. The statutory provisions concerning the duties of the Public Administrator indicate that the Public Administrator is "subject to the same duties, penalties, provisions and proceedings as are enjoined upon or authorized against personal representatives, guardians and conservators by chapters 472 to 475, RSMo, so far as the same may be applicable." The statutory scheme suggests that the legislature intended that the Public Administrator be treated in the same way as others serving in a fiduciary capacity. In *State ex rel. Russell v. Mueller,* 332 Mo. 758, 60 S.W.2d 48, 50 (1933), the court recognized this, stating:

> Of course, the very nature of the public administrator's office serves to differentiate certain features of his administration of an estate from that of an individual administrator or executor, yet in all material respects the duties and liabilities are the same. Recognizing this fact, the Legislature has provided by section 300, R.S.1929, that in addition to the provisions of the law which in their very nature can apply to the public administrator alone, he and his sureties shall have the same powers as are conferred upon, and be subject to the same duties, penalties, provisions and proceedings as are enjoined upon, or authorized against, executors and administrators by articles 1 and 13 of the administration chapter, so far as the same may be applicable.

Also, § 473.773, RSMo 1994 provides:

> The public administrator and the sureties upon his bond as public administrator and the sureties on any other bonds given specially for separate estates, shall be liable for any loss occasioned by any wrongful, illegal or negligent act or omission of any deputy acting under such authority or by color of his authority as such deputy, to the same extent and in the same manner as if the wrongful, illegal or negligent act or omission had been committed, permit-

ted or suffered by the public administrator personally.

Section 473.773 was in place long before September 12, 1977. Consequently, the enactment of § 537.600 has no effect on immunity rules with respect to a public administrator's liability. This principle applies to liability for costs as well as to liability for the loss itself. *Lewis v. McCabe,* 16 Mo.App. 398 (1885) (costs awarded against a public administrator in official capacity). We conclude that the doctrine of sovereign immunity does not preclude recovery of costs against either Murphy or Jackson County.

■ The County also claims that the doctrine of public official immunity precludes an award of costs against Murphy. That contention is ruled by *Ballew v. Aylward,* 882 S.W.2d 237 (Mo.App.1994). In *Ballew,* a protectee brought an action against the public administrator claiming that the public administrator was negligent in the performance of duties as conservator during a period of time in which the protectee was incapacitated. The public administrator contended he was protected by the doctrine of public official immunity. The court rejected that argument, relying on *Russell,* 332 Mo. 758, 60 S.W.2d 48, which is discussed above as to the issue of sovereign immunity.

■ Appellants also attempt to argue that costs could not have been awarded because there was no judgment on the merits against them in the instant case. They argue that because the case was settled and not tried to conclusion, there is no "prevailing party" under § 472.040. Section 472.040 provides: "In all suits and other proceedings in the probate division of the circuit court, the party prevailing shall recover his costs against the other party...." We find no authority for the proposition that a case must be tried to conclusion before any party can claim to be a prevailing party. The court could reasonably have determined that the special conservator ad litem was the prevailing party. The court in *White v. Missouri Veterinary Med. Bd.,* 906 S.W.2d 753, 755 (Mo.App.1995) held that the term may also apply to a plaintiff who has obtained a settlement in a case. *Id.* In this case, the trial court did not err in regarding the conservator ad litem as a "prevailing party."

## Conclusion

For all the foregoing reasons, we conclude that the trial court did not err in its order directing Jackson County to pay the total sum of $28,209.92 to the conservator ad litem. Judgment is affirmed.

ELLIS and HOWARD, JJ., concur.