STATE OF MISSOURI on the Information of ROY McKITTRICK, Attorney General, at the Relation of the CITY OF LEBANON, a Municipal Corporation, Relator, v. THE MISSOURI STANDARD TELEPHONE COMPANY, a Corporation.—85 S. W. (2d) 613.

Court en Banc, July 30, 1935.

*Roy McKittrick*, Attorney General, *J. Victor Jeffries, Robert C. Fields* and *Jean Paul Bradshaw* for relator; *Ragland, Otto & Potter* of counsel.

644

*Phil M. Donnelly* and *Robert W. Hedrick* for respondent; *Frank E. Atwood* of counsel.

646

*Oliver & Oliver* for Southeast Missouri Telephone Company, *amicus curiae.*

*Smith B. Atwood* for Southwestern Bell Telephone Company, *amicus curiae; Earl H. Painter* of counsel.

*L. E. Durham, H. S. Conrad* and *C. E. Cowherd* for Missouri Telephone Company, *amicus curiae.*

*A. Z. Patterson* and *D. C. Chastain* for United Telephone Company and Higginsville Telephone Company, *amici curiae.*

*B. I. Litowich* for Western Telephone Company, *amicus curiae.*

*James A. Waechter* and *Roberts P. Elam* for Ozark Central Telephone Company, *amicus curiae.*

COLES, J.—This is an original proceeding in the nature of *quo warranto* filed in this court on August 8, 1934, by the Attorney General of the State of Missouri at the relation of the city of Lebanon against The Missouri Standard Telephone Company as respondent praying that this court make and enter an order directing the respondent to remove from the streets, alleys and public thoroughfares of the city of Lebanon, Missouri, its poles, wires and other telephone equipment used by respondent in conducting its telephone business. After issue had been joined upon the information by proper pleadings this court made an order appointing a special commissioner with directions to take the evidence and report the same to the court together with his findings of fact and conclusions of law. Afterwards the special commissioner filed his report herein setting forth the evidence taken before him and also his findings of fact and conclusions of law thereon. Thereafter respondent filed herein its exceptions to the special commissioner's report. ■ Concurrently with the filing of its answer respondent filed a motion to dismiss the information on the ground that the information was filed in violation of Rule 32 of the rules of this court in that at the time of the filing of the information in this court a similar information filed by the Prosecuting Attorney of Laclede County, Missouri, was pending in the Circuit Court of Laclede County, Missouri, and also upon the further ground that the city of Lebanon did not authorize the Attorney General to file an information in this court. As the evidence shows that the proceeding instituted in the Circuit Court of Laclede County was dismissed on the day following the filing of the information in this court and that on September 10, 1934, the board of aldermen of Lebanon passed a resolution ratifying the action of the Attorney General in instituting the present proceeding in this court, we are of the opinion that the respondent's motion to dismiss should be overruled.

The evidence submitted, so far as we deem it material to the issues here presented is substantially as follows: **The city of Lebanon** is a city of the fourth class. The respondent is a Missouri corporation authorized to engage in the telephone business. In March, 1899, the city of Lebanon granted a franchise to W. C. Faubion, his successors and assigns to erect and maintain a telephone system in that city for a period of twenty years. Faubion began to operate a telephone system in Lebanon in 1899 or 1900 and continued to do so until 1909. On November 8, 1909, The Lebanon Telephone Company was incorporated under the laws of the State of Missouri. Among the incorporators was W. C. Faubion. This corporation then continued to operate the telephone system established by Faubion. In December, 1908, a Missouri corporation authorized to engage in the telephone business was organized under the name Laclede County Telephone Company. The Laclede County Telephone Company shortly after its organization began operating a telephone system in Lebanon. From about 1908 to 1910 both the Lebanon Telephone Company and the Laclede County Telephone Company operated telephone systems in Lebanon. About 1910 the Laclede County Telephone Company sold its system to the Lebanon Telephone Company but in the contract of sale it was stipulated that The Lebanon Telephone Company should take the name of the selling company, that is to say Laclede County Telephone Company. On September 2, 1912, the board of aldermen of Lebanon granted a "new franchise" to operate a telephone system in Lebanon for a period of ten years to the Laclede County Telephone Company. On December 11, 1922, the board of aldermen of Lebanon granted to Laclede County Telephone Company its successors and assigns a franchise to operate a telephone system in the city for a period of ten years, the telephone company to pay the city $150 per year in quarterly installments and to grant the city the use of three telephones free of charge during the life of the franchise. About April 4, 1928, with the proper sanction of the city of Lebanon and the Public Service Commission of Missouri, the Laclede County Telephone Company sold and transferred its telephone system and franchise to the respondent Missouri Standard Telephone Company for $65,000 and the Public Service Commission granted the respondent the right to operate the telephone system in Lebanon and respondent has operated such system continuously since that time. The evidence shows that both the relator and the respondent at the time overlooked the fact that the franchise of December 11, 1922, heretofore mentioned, expired on December 11, 1932. However, the evidence shows that on June 5, 1933, the board of aldermen of the city of Lebanon passed a resolution as follows: "A motion was made, supported and carried, to notify the Missouri Standard Telephone Company that their fran-

chise having expired they should not continue to operate on the old franchise but must make application for a new one on the basis of the payment of $20,000 for a ten-year period, and that the City Clerk shall not accept any more payments on the old basis." This resolution was brought to the attention of the local manager of the respondent company about June 12, 1933. The evidence further shows that shortly after June 14, 1933, Mr. Albert, the general manager of the respondent company came to Lebanon from his home in Columbus, Ohio, with a view to discussing with the city authorities the questions raised by the resolution above mentioned. Mr. Albert talked with the mayor and with the board of aldermen. In these talks Mr. Albert stated that the $20,000 charge suggested for a ten-year franchise was unreasonable, but that respondent was perfectly willing to pay a reasonable tax and to "accept a form of franchise," but in the end these conversations proved futile and nothing came of them. On August 11, 1933, the respondent wrote the city clerk of Lebanon a letter in which it stated in substance that it would "accept a franchise" from the city for a ten-year period for which it would pay $325 annually providing the free telephone service to the city was discontinued. The city made no reply to this letter. Later, on December 1, 1933, the respondent wrote a letter to the board of aldermen renewing the proposal made in its previous letter of August 11th above mentioned. Meantime, on November 6, 1933, an oral application for a telephone franchise was made to the board of aldermen of Lebanon "by Jean Paul Bradshaw as spokesman for a group of Lebanon citizens" and on that date the board of aldermen enacted an ordinance granting a franchise to I. T. Curry, Jean Paul Bradshaw and others, their successors and assigns, to construct and maintain a telephone system in the city of Lebanon for a period of ten years for a consideration of $300 per year, the city to have the use of three telephones free of charge during the life of the franchise. On November 8, 1933, a formal written notice signed by the mayor was served on the respondent company informing it of the enactment of the ordinance just mentioned and notifying it "that by order of the city council duly passed" respondent was required to remove its telephone poles, wires and other equipment from the streets, alleys and public thoroughfares of the city on or before December 26, 1933. There was an oral agreement between the city and the respondent for the reciprocal use of the city's electric light poles and the respondent's telephone poles for the support of both electric light wires and telephone wires where such common use was found convenient by either party. In some instances the city attached its electric light wires to the telephone company's poles and the telephone company attached its telephone wires to the city's electric light poles. This practice had prevailed for many years and

was followed prior to the time the respondent took over the telephone system. After the respondent acquired the telephone system in 1928 it expended about $11,000 in "additions and betterments" to the system. After the franchise expired in December, 1932, the respondent made no expenditures except for maintenance of lines already constructed. In the summer of 1933, after the respondent knew of the expiration of its franchise, it moved four poles and the wires thereon in the rear of the courthouse. These poles were moved at the request of the city engineer "in order that the alley could be graded." On Thanksgiving Day, 1934, a storm "tore down an open wire lead which necessitated its replacement" to restore service. This work cost about $400. No request was made by the city for this expenditure. The respondent paid the city the two first quarterly installments of the annual charge for the year 1933. The city used three free telephones of the respondent until about December, 1933, and after that continued to use two telephones. The respondent's telephone system in Lebanon has connections with the county telephone systems and also with the Southwestern Bell lines which have nationwide connections. The grantees of the franchise of November 6, 1933, have taken no steps to install a telephone system under that franchise.

It is conceded by the relator that the respondent and its predecessors have at all times complied with all the conditions imposed by the several franchises under which they have respectively operated. No complaint is made of the quality of the service rendered and so far as the evidence shows the service has at all times been adequate and sufficient. There was other evidence submitted which we deem it unnecessary to set forth in detail. In general this evidence tended to show that respondent was making an earnest endeavor to secure a new franchise from the city of Lebanon but that the city authorities of Lebanon turned a deaf ear to all respondent's suggestions and requests and as heretofore stated on November 6, 1933, granted a ten-year franchise to "a group of Lebanon citizens."

The first controverted issue presented for our consideration relates to the duration of respondent's franchise or right to use the streets and alleys of Lebanon for the maintenance or extension of its telephone equipment. The relator contends that respondent's right to use the streets and alleys of Lebanon for the purpose mentioned terminated on December 11, 1932, when the franchise granted in December, 1922, expired. On the other hand the respondent urges that by virtue of the statutes of Missouri and the consent of the city of Lebanon it has acquired the privilege of placing and maintaining its poles, wires and other telephone equipment in the streets and alleys of Lebanon for a period of unlimited duration. The issue thus presented for consideration must be determined by recourse to the

pertinent statutes and city ordinances. The Revised Statutes of Missouri of 1879, in Article V of Chapter 21 thereof, authorized the incorporation of telegraph and telephone companies and in Section 879 of said article provided:

"Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures, along, and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters."

Thereafter Section 879 as above set forth was amended and as amended it became Section 2721, Revised Statutes 1889, as follows:

"Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, across or under any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters: *Provided,* any telegraph or telephone company desiring to place their wires and other fixtures under ground, in any city, they shall first obtain consent from said city through the municipal authorities thereof."

The statute was carried into the Revised Statutes of 1899 in the same form and became Section 1251 therein. The section of the statutes in question was amended by the Act of March 23, 1903 (Laws 1903, p. 138), so as to read as follows:

"Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines are authorized to set their poles, piers, abutments, wires, and other fixtures along, across or under any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters: *Provided,* any telegraph or telephone company desiring to place their wires, poles and other fixtures in any city, they shall first obtain consent from said city through the municipal authorities thereof."

The Act of March 23, 1903, remains in force and has appeared without change in all subsequent revisions of our statutes and has now become Section 4921, Revised Statutes 1929.

In its general scope and meaning we are of the opinion that Section 4921 is a reasonably clear and simple statute. When the Act of March 23, 1903, was first enacted, the Legislature had already delegated to the cities of the State, including cities of the fourth class, a large measure of control over the use of their streets. [Revised Statutes 1899, secs. 5979, 5960; Revised Statutes 1929, secs. 7047, 7022.] We may properly conclude that the proviso was added

to the Act of 1903 in recognition of the right already conferred upon cities to control to a considerable extent the use of their streets. The statute, by its express terms, is a legislative grant to telegraph and telephone companies organized under the provisions of the Missouri statutes of the right "to set their poles, piers, abutments, wires and other fixtures along, across or under any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters." But the grant of authority conferred by the statute is limited by the terms of the proviso which prescribes that where a telegraph or telephone company desires "to place their wires, poles and other fixtures in any city they shall first obtain consent from said city through the municipal authorities thereof." The respondent urges that the "consent" of "the municipal authorities" required by Section 4921, Revised Statutes 1929, as a condition precedent to the use by a telephone company of the streets of a city for the erection of its poles and wires must under the terms of the statute be limited to an unconditional "consent," that is to say to a categorical "yes," and that the city can properly impose no conditions as to the duration of the privilege conferred. From this premise it is deduced that the act of the city of Lebanon in granting a franchise to the Laclede County Telephone Company in 1912 must be treated as an unconditional consent to the use of its streets by that company for telephone purposes for an unlimited period and hence that respondent as the successor and assign of the Laclede County Telephone Company has acquired the same rights to the use of the streets. But in our opinion this contention is untenable and contrary to reason and authority. It is conceded that under the provisions of Section 4921 a city by withholding its consent can entirely exclude a Missouri telephone corporation from placing its poles and wires in its streets. We are of the opinion that the power to impose reasonable conditions where consent is given must be implied from the right entirely to withhold consent. We have been referred to no Missouri case dealing with this specific question under the particular statute here under consideration. But there are several cases decided by this court which fully support the principle above enunciated. The Constitution of Missouri provides:

"No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchise so granted shall not be transferred without similar assent first obtained." [Art. XII, Sec. 20.]

This court has been called upon to construe and apply this constitutional provision in several cases.

In discussing the meaning of the above constitutional provision this court in the case of St. Louis & Meramec River Railroad Company v. City of Kirkwood, 159 Mo. 239, l. c. 252, said: "It would be difficult to conceive of a more positive and unequivocal veto than that conferred upon the cities, towns and villages of this State by Section 20 of Article 12 of the Constitution, and Section 2543, supra, to prevent the construction and operation of railroads upon their streets and highways, without their consent. When such power is given to cities and towns it is not limited to a mere 'yes' or 'no' but they may impose such conditions upon their consent as they see fit."

The same constitutional provision was considered by this court in the case of Southwest Missouri Railway v. Public Service Commission, 281 Mo. 52, l. c. 68, 219 S. W. 380, and in this case the court said: "It has been consistently held that in giving its consent to the use of its streets by a street railway a city lawfully may impose conditions. The cases are collected in City of St. Louis v. Public Service Commission, 207 S. W. 799. The authority of the city to condition its asset is not expressly conferred by Section 20 of Article 12. The power is implied from the right entirely to withhold such assent." We think it is well settled by the decided weight of authority that where a city is authorized by statute to give or to withhold its consent to the use of its streets by a public utility that upon giving its consent the city can impose reasonable conditions upon the exercise of the right or franchise granted and that among the conditions that it can rightfully impose is one limiting the duration of the franchise. [City Railway Co. v. Citizens' St. Ry. Co. (Ind.), 52 N. E. 157; Louisville Trust Co. v. Cincinnati, 76 Fed. 296; Mayor, etc., of Knoxville v. Africa, 77 Fed. 501; City of Indianapolis v. Consumers' Gas Trust Co., 144 Fed. 640; Blair v. Chicago, 201 U. S. 400, l. c. 458; 3 Dillon on Municipal Corp. (5 Ed.), sec. 1230; 4 McQuillin, Municipal Corp. (2 Ed.), 1781; 1 Pond, Public Utilities (4 Ed.), sec. 225; 2 Elliott, Streets and Roads (4 Ed.), sec. 940.] Counsel for respondent has directed our attention to certain cases which announce a rule at variance with the doctrine above set forth but in our opinion these cases are not in harmony with the weight of authority or with sound principles.

In support of its view that the respondent has acquired a right to maintain its poles, etc., in the streets of Lebanon for a period of unlimited duration respondent makes a further contention not heretofore mentioned. It is said that the evidence shows that for a period of about two years after the Laclede County Telephone Company and The Lebanon Telephone Company were organized (that is after 1908 and 1909), both these companies are shown to have separately operated telephone systems in Lebanon; that there is no affirmative evidence showing that either of the companies had a

654

franchise during this period; that it must be presumed that they were acting lawfully in occupying the streets of Lebanon during this period and that they had obtained the consent of the city to use its streets for their telephone equipment; that respondent has succeeded to all the rights and franchises of both the companies mentioned and hence we must conclude that respondent as successor to the franchises of these companies has obtained a franchise or right of unlimited duration to place its poles, etc., in the streets of Lebanon. This course of reasoning seems to us to be without merit. The evidence shows that in every instance where the city is affirmatively shown to have granted a right to use its streets for telephone purposes the duration of the grant was limited to a fixed period of time. This is true in the cases of the grant of 1899 to Faubion and of the grants of 1912 and 1922 to Laclede County Telephone Company. The grant of a franchise to the Laclede County Telephone Company in 1912, was made after the merger of The Lebanon Telephone Company and the Laclede County Telephone Company in 1910 and the ordinance granting the franchise expressly declared it to be a ''new franchise.'' Upon this state of facts we are certainly not justified in presuming as a matter of law, or, in inferring as a matter of fact, that in 1908 or 1909 the city of Lebanon granted a franchise of unlimited duration to use its streets for telephone purposes to either the Lebanon Company or the Laclede Company. Furthermore we are of the opinion that even if the city had previously granted a franchise of unlimited duration to the Lebanon Company or to the Laclede Company or to both, the merger of the companies in 1910 into the Laclede Company and the acceptance by the latter company in 1912 and 1922 of franchises of limited duration would have constituted an abandonment and relinquishment of the prior franchise or franchises. Our general conclusion upon the phase of this case here under discussion is that the respondent's right to use the streets and alleys of Lebanon for the maintenance of its telephone poles and wires ceased in December, 1932, when its franchise expired.

It is further contended by respondent that the provisions of the Public Service Commission law enacted in 1913 precluded both the relator and the respondent ''from contracting with each other'' in such manner and form as to limit the duration of respondent's right to use relator's streets for the maintenance of its telephone equipment. This contention we think is without merit. It is true that the Public Service Commission law vests in the Public Service Commission very extensive visitorial and regulatory powers over the conduct of the business of public utilities including telephone companies. But the Public Service Commission law does not authorize the Public Service Commission to grant to a public utility a franchise to use the streets of a city for the conduct of its business or to oust the utility from the use of a city's streets when the term of a fran-

chise lawfully granted has expired. The requirement of municipal consent to the use of a city's streets for the erection and maintenance of telephone poles and wires by Missouri corporations is purely statutory and is not within the purview of the Public Service Commission law. The authority conferred upon the Public Service Commission to grant a certificate of public necessity and convenience to a telephone corporation in the instances specified in Section 5217, Revised Statutes 1929, does not limit the authority of the city to grant franchises and to enforce ouster when the franchise granted has terminated, but merely imposes a limitation upon the right of the telephone company to exercise the granted franchise. All of the principles enuniciated in this paragraph have been fully sanctioned, explicitly or implicitly, by a recent decision of this court. [State ex inf. Shartel v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394.]

It is further urged on behalf of respondent that the city of Lebanon because of its acts and conduct should be held estopped to oust respondent from the use of its streets and alleys for the maintenance of its telephone poles and wires. While the doctrine of equitable estoppel is not generally applicable to municipal corporations in matters pertaining to governmental functions, yet courts with much caution may apply the doctrine in exceptional cases where upon all the circumstances of the case right and justice require it. [State ex inf. Shartel v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394; City of Mountain View v. Farmers' Telephone Co., 294 Mo. 623, 243 S. W. 153; City of St. Joseph v. St. Joseph Terminal Co., 268 Mo. 47, 186 S. W. 1080.]

In the case now before us we deem it unnecessary to state anew the elementary and familiar principles governing the application of the doctrine of equitable estoppel. In our view, the acts and conduct of the parties while respondent and its predecessors were properly exercising the privileges conferred by the franchises granted prior to the termination of the last franchise in 1932 can afford no basis for an estoppel as against relator. Since the expiration of the last franchise in December, 1932, the relator has done no act and followed no course of conduct which can properly be held to raise an estoppel against it. The fact that relator did not immediately upon the termination of the franchise in 1932 take legal action to oust respondent from the use of its streets for telephone purposes affords no basis for estoppel. The evidence shows that in June, 1933, relator formally notified respondent that its franchise had expired and that no more payments under the old franchise would be accepted by relator. The fact that respondent in the interval between December, 1932, and June, 1933, paid relator two quarterly installments of $37.50 each on the basis of the old rate is certainly insufficient to create an estoppel. In June, 1933, relator

formally stated its position in reference to the status of respondent's franchise. After that respondent continued its telephone service but respondent followed this course of its own volition and there is no showing that relator requested respondent to continue its service. In the summer of 1933 at the request of the city engineer respondent moved four telephone poles in the rear of the courthouse "in order that the alley could be graded." The respondent was of course holding its property in subordination to the exercise of the police power delegated to the city by law, and in the exercise of its police power the city had the undoubted right to direct the removal of these poles. [R. S. 1929, sec. 7022.] Upon the whole it is clear to us that the facts in evidence are entirely insufficient to estop the relators from prosecuting the present suit.

It is well established that this court may properly exercise a judicial discretion in granting or refusing a judgment of ouster in a *quo warranto* proceeding. [State ex inf. Otto, Atty. Gen., v. School District, 314 Mo. 315, 284 S. W. 135; State ex rel. v. Ellis, 329 Mo. 124, 44 S. W. (2d) 129; State ex rel. v. Cupples Station Co., 283 Mo. 115, 223 S. W. 75; State ex rel. v. Town of Mansfield, 99 Mo. App. 146, 72 S. W. 471.] It follows that if a writ of ouster is granted the court may exercise its judicial discretion in determining its terms. The public good is the element chiefly to be considered as a guide to the court in the exercise of its discretionary authority. In the case before us it appears that respondent operates the only telephone system in Lebanon, a city of about 3600 inhabitants. The evidence shows that the respondent's telephone system has local, county and nationwide connections. We may take judicial notice of the fact that at this time the use of the telephone is a practical necessity essential to the safety, comfort, convenience and social and economic welfare of all the people. The evidence shows that respondent's telephone system is now functioning satisfactorily while the grantees of the new franchise have taken no steps to install a telephone system under their franchise. If we should direct the immediate removal of the respondent's "telephone poles, wires and other fixtures" from the "streets, alleys, and public thoroughfares" of Lebanon we would leave the people of Lebanon without the means of telephonic communication and would inflict upon them, as well as upon all others who wish to communicate with them, a most serious injury. We therefore order and direct that a writ of ouster issue herein; that respondent be granted a period of one year within which to dispose of its property or remove its poles, wires and other equipment from the streets, alleys and other public thoroughfares of the city of Lebanon; that leave be granted to either party to this cause to move this court within said period of one year to modify this order by either decreasing or increasing the period of time fixed for the removal of respondent's property; and that the court reserves

jurisdiction to entertain and act upon any motion filed herein within the period mentioned and thereafter make such order or orders as it may deem proper and appropriate in the premises.

Writ of ouster granted as directed in opinion. All concur.

### ON MOTION FOR REHEARING.

COLES, J.—We have carefully reexamined our opinion in this case in the light of the suggestions made in support of respondent's motion for rehearing. We find nothing presented for our consideration that warrants us in modifying or altering the conclusions heretofore announced.

In our original opinion we referred to the case of St. Louis & Meramec River Railroad Company v. Kirkwood, 159 Mo. 239, wherein this court had occasion to discuss the meaning of Section 20 of Article 12 of the Missouri Constitution providing, in substance that the General Assembly shall pass no law "granting the right to construct and operate a street railroad within any city . . . without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad." In its opinion in the case last mentioned the court said that the "consent" required by the constitutional provision just mentioned "is not limited to a mere 'yes' or 'no' but they may impose such conditions upon their consent as they see fit." While in our opinion in the instant case we reproduced the statement, above set forth, as made in the Kirkwood case, supra, we of course gave the quoted statement our approval only to the extent that it had a bearing upon the facts and issues presented in the case before us. We gave our sanction to the pronouncement made in the Kirkwood case, supra, only in so far as it tended, by analogy, to support the view that a city in giving its consent to the use of its streets for the erection of telephone poles and wires could limit the duration of the privilege or franchise granted. We may add that our original opinion in this case, in express terms, is limited to telephone corporations organized under the Missouri Statutes. It does not deal with individuals or foreign corporations operating telephone systems in this State.

Respondent's motion for rehearing is overruled.