STATE OF MISSOURI on the information of ROY MCKITTRICK, Attorney General, Informant, v. SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation.—92 S. W. (2d) 612.

Court en Banc, March 18, 1936.

618

*Roy McKittrick*, Attorney General, *James L. HornBostel* and *Covell R. Hewitt*, Assistant Attorneys General, for informant.

*Smith B. Atwood, E. W. Clausen* and *John Mohler* for respondent; *Earl H. Painter* of counsel.

COLLET, J.—This is an original proceeding in the nature of *quo warranto* whereby the Attorney General seeks to prohibit the Southwestern Bell Telephone Company from maintaining its poles, wires, and conduits on, over and under certain state highways. Upon the filing of the information the respondent entered its voluntary appearance, waived the issuance of our writ and pleaded to the information as and for the writ. The issues were made up and Hon. Walter E. Sloat was appointed special commissioner to take testimony and report his findings of fact and conclusions of law. He concluded that our writ should be quashed. His opinion, filed with his report of the facts, is of material assistance to us in the determination of this cause. The facts are simple and will appear hereafter in the course of the opinion.

In 1851 the General Assembly gave to telegraph companies the right to construct lines "for electric telegraphs" upon and along any of the highways and public roads of the State and across any of the waters within the State and to erect the necessary fixtures, including posts, piers and abutments, for sustaining the wires of such lines. [Laws 1851, p. 286.] In that act it was provided that the lines and equipment should "be so constructed as not to incommode the public use of the roads and highways" and that in incorporated cities and towns the municipal authorities should control the manner and character of construction and alteration. At the time of the passage of that act telephones had not been invented. After the invention of telephones the Legislature amended the Act of 1851 so as to include telephone companies and their lines. [Sec. 879, R. S. 1879.] The 1889 revision of the statutes contains an extended authority to telephone and telegraph companies to place their lines under, in addition to "along and across" public "roads, streets and waters." [Sec. 2721, R. S. 1889;

State ex inf. Atty. Gen. ex rel. City of Lebanon v. Missouri Standard Telephone Company, 337 Mo. 642, 85 S. W. (2d) 613.] With only unimportant changes the statute is the same now. [Sec. 4921, R. S. 1929, Mo. Stat. Ann., p. 2237.]

Upon the passage of the "Centennial Road Law" in 1921 creating the State Highway Commission, establishing the "State Highway System" and giving that commission supervision of all state highways, the General Assembly enacted what is now Section 8109, Revised Statutes 1929, which places the location or relocation of telephone lines within the right of way of state highways under the supervision of the State Highway Commission, but expressly denies to that commission the right to exclude such lines therefrom. Such was the state of the statute law on the subject at the time of the filing of relator's information on March 27, 1934.

The respondent, Southwestern Bell Telephone Company, is a Missouri corporation, engaged in the business of furnishing telephone service as a public utility and is entitled to whatever privileges the above statute confers. The record shows that respondent has erected and now maintains on and under the highways of Missouri, outside of municipal limits, a total of 317,212 poles, approximately 88,786 miles of wire upon those poles, approximately 299 miles of conduit and approximately 643 miles of cable which comprise virtually all of respondent's poles, wires, conduit and cables located outside the limits of incorporated municipalities except for approximately 7068 poles and approximately 3750 miles of wire located on railroad rights of way. Respondent pays nothing for the privilege of placing and maintaining this equipment on and under the highways.

The record clearly shows that respondent is exercising only the authority and privileges which the statute undertakes to give, therefore if the statute is valid this action must fail. But if, as the Attorney General contends, Section 4921 is in conflict with Section 46 of Article IV of the Constitution of Missouri, then our writ of ouster should issue, since no rights may be conferred by an unconstitutional law.

The constitutional provision above referred to is as follows:

"The General Assembly shall have no power to make any grant, or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever: *Provided*, That this shall not be so construed as to prevent the grant of aid in a case of public calamity." [Sec. 46, Ann. Stat. Mo., Vol. 15, p. 483.]

It is contended that Section 4921 constitutes a grant of a "thing of value" to the respondent and other telephone as well as telegraph companies and is therefore invalid.

We held in State ex inf. v. Mo. Standard Tel. Co., supra, that Section 4921 was, in express terms, a legislative grant. But is it the character of a grant which Section 46 of Article IV of the Constitu-

tion forbids? It has heretofore been held by this court that only gratuitous grants are prohibited by the Constitution (State ex rel. Kelly v. Hackmann, 275 Mo. 636, 205 S. W. 161). The question is therefore simplified to that extent.

In the case of Georgia v. Cincinnati So. Ry., 248 U. S. 26, 39 Sup. Ct. 14, 63 L. Ed. 104, the State of Georgia sought to prevent a railroad company from longer occupying or using any portion of the right of way of the Western & Atlantic Railroad built and owned by the State of Georgia. The Georgia General Assembly had theretofore, by statute, granted to the defendant railroad company the right to use the state-owned right of way upon terms which amounted to a condition that the defendant's use would not interfere with the use of the right of way by the state-owned railroad which was already located thereon. The State undertook to rescind the grant. In the action brought for the purpose of ousting the defendant, the State contended that the statute constituting the grant was invalid because by the Georgia Constitution the General Assembly was forbidden to "grant any donation or gratuity in favor of any person, corporation, or association." In that case the United States Supreme Court disposed of that contention in the following language:

"But it is necessary to mention the objection that by the Constitution of Georgia the General Assembly was forbidden to 'grant any donation or gratuity in favor of any person, corporation or association,' and that there was no consideration for this grant. Even if the contemplated and invited change of position on the part of the Cincinnati & Southern Railway and the benefit to the State expressly contemplated as ensuing from it were not the conventional inducement of the grant, and so, were not technically a consideration, we are of the opinion that the grant was not a gratuity within the meaning of the State Constitution. A conveyance in aid of a public purpose from which great benefits are expected is not within the class of evils that the Constitution intended to prevent and in our opinion is not within the meaning of the word as it naturally would be understood."

There is no distinction in the principal between that case and the case at bar. The respondent is a public utility engaged in furnishing telephone service to the general public. The General Assembly no doubt considered that the benefit to the general public arising from the promotion of the extension of such service justified the granting of the privilege of the use of the highways. While that benefit may not be said to be a formal consideration as that term is generally understood, yet it is that benefit and that consideration which takes this grant out of the class of grants prohibited by the Constitution.

For the reasons above stated, ouster is denied, and the proceeding is dismissed. It is so ordered.

All concur.