STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Appellant,

v.

Willard G. EAKIN et al., Respondents.

No. 48476.

Supreme Court of Missouri,

Division No. 2.

April 10, 1962.

Motion for Rehearing or Transfer
to Court en Banc Denied
May 14, 1962.

Robert L. Hyder, Ralph H. Duggins, Jefferson City, for plaintiff-appellant.

Walter Wehrle, Thomas W. Wehrle, Wehrle & Wehrle, Clayton, for respondents.

BOHLING, Commissioner.

This is an eminent domain proceeding in St. Louis County involving the location, construction and maintenance of a part of what is now known as Interstate Route 44, a limited access highway with two 24 feet wide high type pavements, separated by a median strip. The Phillips Pipe Line Company, a corporate interstate common carrier of oil, gas and the products thereof and sometimes herein referred to as Phillips, has and is using its private right of way easement along a portion of said proposed highway right of way at a highway interchange. The State Highway Commission, condemnor and sometimes designated Relator or Commission, in addition to condemning the necessary right of way for said highway across the lands of Willard G. Eakin and Emily Eakin, his wife, and Deep Springs Farm, Incorporated, a corporation, seeks to condemn an easement in a 50 foot wide strip of said condemnees' land immediately north of and in juxtaposition to the north line of said proposed highway right of way as a substitute location for the aforesaid portion of Phillips' existing pipe lines. The court, after a hearing, sustained the above-named condemnees' "Motion to Strike" from Relator's petition the material portions thereof wherein Relator sought

the substitute easement over their lands for the pipe lines of the Phillips Pipe Line Company on the grounds Relator was without authority under the Constitution and laws "to condemn an easement for pipe line right-of-way for the Phillips Pipe Line Company, a corporation," or "to use public funds of the State of Missouri to pay for an easement for pipe line right-of-way for the Phillips Pipe Line Company, a corporation"; and, striking ¶¶ 7, 30.20 and 30.21 from the petition, dismissed Relator's cause of action against said condemnees "for the appropriation of an easement for pipe-line purposes for the use of the Phillips Pipe Line Company, a corporation." Relator has appealed.

Among the issues involved is whether the condemnation of this substitute easement for the relocation of Phillips' pipe lines constitutes a taking of private property for public use under Art. I, § 26 or a taking for private use prohibited by Art. I, § 28, of the Constitution of Missouri, V.A.M.S. We have jurisdiction of the appeal.

Relator pleads, in substance in its petition (¶ 3), that it is authorized to locate, relocate, design, construct, reconstruct and maintain state highways when necessary to comply with any federal law which is a condition to the receipt of federal highway funds; that a federal law (see 23 U.S.C.A. particularly §§ 103(d), 106 and 120(c)) provides for a National System of Interstate and Defense Highways; that said Interstate Route 44 has been duly selected by the Highway Departments of the states of Oklahoma, Missouri, and Illinois and the Secretary of Commerce of the United States as a part of said National System of Interstate and Defense Highways for a highway connection between the Missouri-Oklahoma and Missouri-Illinois state lines; and that said federal law makes it a condition to the receipt of federal highway funds that Relator construct and maintain said highway as a State highway.

It is also alleged (¶ 7) that Phillips Pipe Line Company is an interstate common carrier of oil, gas and the products thereof for public use by underground pipe lines; that Phillips owns and is using a certain strip of land within said proposed highway right of way for public pipe line purposes; that it will be necessary to move said pipe lines before said highway "can be properly and economically constructed and maintained"; that to take Phillips' said strip for said highway purposes and remove said pipe lines would materially interfere with or destroy the public pipe line use to which said strip of land is devoted; that Phillips has agreed with Relator to surrender said strip of land if Relator will secure for Phillips like rights over a substitute strip of land immediately north of said proposed highway right of way; that "it is necessary for the proper and economical construction and maintenance" of said State highway that like rights be acquired for Phillips in such substitute strip of land and that Relator has so found, determined and declared in compliance with law.

Relator also alleges (¶ 10): "It is necessary for the proper and economical construction and maintenance of said State highway that the lands, property, and rights" indicated on the detail plans and set out in the petition be acquired, and that Relator, in compliance with law, has so found, determined and declared.

Paragraphs 30 and 30.10 of the petition describe the land of the named condemnees to be taken for said proposed highway right of way. Paragraph 30.20 describes the 50 foot wide "easement" across said respective condemnees' land to be taken for the substitute location of Phillips' existing pipe lines. Paragraph 30.21 states the purposes for which said substitute easement is sought on behalf of Phillips.

The following constitutional and statutory provisions bear on whether Relator has authority to provide a substitute location for the pipe lines in the circumstances of this case, which is stated to be a case of first impression in Missouri.

Article IV, § 29, Mo.Const.1945, provides that the Commission "shall have authority

over and power to locate, relocate, design and maintain all state highways; and authority to construct and reconstruct state highways * * *; and authority to limit access to, from and across state highways where the public interest and safety may require," all subject to such limitations and conditions as may be imposed by law.

Section 30 of said Article provides that the state revenue therein specified "be credited to a special fund and stand appropriated without legislative action for" stated purposes in the order specified, including:

"Second, any balance in excess of the amount necessary to meet the payment of the principal and interest of any state road bonds for the next succeeding twelve months shall be credited to the state road fund and shall be expended under the supervision and direction of the commission for the following purposes: * * *

"(3) In the discretion of the commission to locate, relocate, establish, acquire, construct and maintain the following: * * * (d) any highway within the state when necessary to comply with any federal law or requirement which is or shall become a condition to the receipt of federal funds * * *.

"(5) For such other purposes and contingencies relating and appertaining to the construction and maintenance of such highways and bridges as the commission may deem necessary and proper."

* Section 227.120 authorizes the Commission to "condemn, lands in the name of the state of Missouri for the following purposes when necessary for the proper and economical construction and maintenance of state highways: * * *

"(3) Acquiring the right of way for the location, construction, reconstruction, widening, improvement or maintenance of any highway ordered built by the bureau of public roads of the department of agriculture of the United States government; * * *

"(13) Acquiring lands for any other purpose necessary for the proper and economical construction of the state highway system for which the commission may have authority granted by law."

The condemnees stress People ex rel. Trombley v. Humphrey, 1871, 23 Mich. 471, 9 Am.Rep. 94, Cooley, J., writing, a mandamus proceeding by a landowner for the compensation awarded by commissioners appointed under an act of the Michigan Legislature for the appropriation by the State of land to be conveyed to the United States for lighthouses. The United States thought the award excessive and refused to accept the property. The court considered the act unconstitutional, reasoning, briefly stated (476), there was no necessity for the State to exercise this power for the United States as the authority of the United States was ample for its own needs in the circumstances; and that the power of eminent domain in any sovereignty existed only for its own purpose, and the appropriation of lands for national objects was not among the ends contemplated in the creation of state governments. The Trombley and other cases with like statements are considered inconsistent with the "general rule that the exercise of the power of eminent domain by a state or under the authority of a state, if otherwise valid, is not invalidated by the fact that the power is exercised for the benefit or use of the United States" in an Annotation at 143 A.L.R. 1042(II), 1048(III). And, the later holding in Sommers v. City of Flint, 1959, 355 Mich. 655, 96 N.W.2d 119, 122(4), is not in harmony with the Trombley case. However, these authorities do not necessarily rule the precise issue presented here.

The condemnees also quote statements from State ex rel. State Highway Commission v. Gordon, Banc, 327 Mo. 160, 36 S.W. 2d 105, 106 [3], and State ex rel. Missouri Water Co. v. Bostian, Mo.App., 272 S.W.2d 857, 861 [1–4], to like effect. The Gordon case states: "When an agency of the state asserts that the right to exercise the power

* Statutory references are to RSMo 1959, V.A.M.S., unless otherwise indicated.

[eminent domain] has been delegated to it, it must be able to point out a statute which in express terms or by clear implication authorizes such exercise and to the extent claimed." This principle has not been applied in some jurisdictions as strictly to public bodies as it is in construing power given private corporations rendering a public service. Eminent Domain, Nichols, § 3.213 [1], note 97 and cases cited; 29 C.J.S. Eminent Domain § 22. The result reached in the Bostian case, supra, was reversed upon transfer to court en Banc at 365 Mo. 228, 280 S.W.2d 663, stating (666 [1–4]): "On the other hand, 'while eminent domain statutes are to be strictly construed so far as the power to condemn is concerned, yet they are not to be construed so as to defeat the evident purpose of the Legislature.' * * * Further, the doctrine of strict construction does not exclude a reasonable and sound construction of the statute under consideration. * * *" (Citations omitted.)

Relator stresses the following, among other, cases.

An Act of Congress (41 Stat. 1367, 1403) giving authority to condemn land for a substitute town site to relocate the inhabitants of that portion of American Falls, Idaho, which the construction of a reservoir would flood was held constitutional and the condemnation of the necessary land to be for a public use; the court stating, in part: "The transaction is not properly described as the condemnation of the land of one private owner to sell it to another." Brown v. United States, 263 U.S. 78, 82, 83, 44 S.Ct. 92, 94, 68 L.Ed. 171.

Michigan statutes authorizing state officials to contract with a railway for acquiring its existing right of way for highway purposes in exchange for a substitute right of way for the railway and to condemn, if necessary, the land for the substitute location of the railway and the action of the state officials thereunder was upheld in Fitzsimmons & Galvin v. Rogers (1928), 243 Mich. 649, 220 N.W. 881, 884 [5], holding, among other rulings, that such taking was for a public use and not for a private interest. Like issues were involved in Dohany v. Rogers (1930), 281 U.S. 362, 366, 50 S.Ct. 299, 301, 74 L.Ed. 904, 68 A.L.R. 434, where the court, citing, among others, the Fitzsimmons case, supra, said with respect to public user under the federal constitution: "It is enough that, although the land is to be used as a right of way for a railroad, its acquisition is so essentially a part of the project for improving a public highway as to be for a public use. [Citations omitted.]" See Annotation, 68 A.L.R. 442, reviewing cases.

The condemnation of a private road over the land of a third party by a railway as a substitute private road for a landowner whose land and only access to a public highway had been taken for railway purposes was held a taking for public use in Pitznogle v. Western Md. Ry. Co., 119 Md. 673, 87 A. 917, 46 L.R.A.,N.S., 319 [1].

In Tiller v. Norfolk & W. Ry. Co., 201 Va. 222, 110 S.E.2d 209, on account of the terrain the cost of construction of a spur track was prohibitive. The case is much like the instant case. The State Highway Department and the railway entered into a contract under which the railway was to construct a portion of the spur track on the highway right of way and acquire land for and construct the highway on a relocation. The railway, in a condemnation proceeding, conceded there was no express statutory authority authorizing it to condemn the substitute highway right of way, but contended the general statutory authority listing various grounds for condemnation of property by railroads "or for other necessary railroad purposes" was sufficiently broad to give it that right. After reviewing cases, the court considered the proceedings were in the public interest and for public use, and sustained the railway's position (l. c. 213 [4–7]). See also Eminent Domain, Nichols, § 7.226; 18 Am.Jur. § 80; 29 C.J.S. Eminent Domain § 31, note 42.

In State ex rel. Bartholomew v. District Court; 126 Mont. 183, 248 P.2d 215,

a case not cited by the parties, a private power corporation sought to condemn a substitute location for the portion of a United States highway to be flooded by the construction of a reservoir. The court assumed that the use was a public use but held the condemnor was without authority to condemn land for state highway purposes.

Section 227.240 gives the Commission control and supervision of the location and removal of public utility facilities, including pipe lines, within state highway rights of way insofar as the public travel and traffic and interference with the construction or maintenance of such highways are concerned; provided, however, that the effect of the order of the Commission shall not be to remove all or any part of such facilities from the right of way of the highway. State ex inf. McKittrick v. Southwestern Bell Tel. Co., 338 Mo. 617, 92 S.W.2d 612; State ex rel. State Highway Comm. v. Weinstein, Mo., 322 S.W.2d 778, 782 [1].

There was evidence to the effect that the traffic on Interstate 44 called for the construction of the proposed interchange here involved; that it was necessary to relocate the pipe lines from within the limits of the interchange for the proper and economical construction and maintenance of said highway, and that this conformed with the policy of the Commission, adopted in 1958, with respect to the "Location of Utility Facilities on State Highways."

Under the contract between Phillips and the Commission Phillips releases to the Commission all its right, title and interest here involved in its existing right of way and the Commission grants to Phillips the right to locate and maintain its facilities upon the Commission's right of way as shown on the substitute location.

▮ The appropriation of land for just compensation by a common carrier of oil, gas and their products by means of underground pipe lines (§ 523.010) is for a public use within Art. I, § 26, Mo.Const. See State v. Shell Pipe Line Corp., 345 Mo.

1222, 139 S.W.2d 510, 519, 520; Phillips Pipe Line Co. v. Brandstetter, 241 Mo.App. 1138, 263 S.W.2d 880, 885, 886, and cases there reviewed.

▮ At first of a different view, we think a study of the cases shows Relator vested with authority to secure a substitute location for the existing pipe lines here involved.

In State ex rel. State Highway Commission v. Curtis, Banc, 359 Mo. 402, 222 S.W. 2d 64, some of the lands and rights alleged to be necessary for the proper and economical construction of the highway were to be devoted to future public uses which had not been determined and were not definitely specified. A bill of particulars, filed in response to a motion on behalf of landowners, alleged that the uses of the land sought to be appropriated and which the plan on file did not positively show were to provide an adequate and necessary safety factor for all contingencies and developments in the construction, reconstruction, improvement and maintenance of the entire ultimate highway, "which may be reasonably anticipated, *but which it is impossible at this time to foresee fully and to state and set forth definitely and in detail.*" (Emphasis added.) One of the public uses specifically detailed was "room to take care of * * * public utility installations * * *" (222 S.W.2d 1. c. 66); and reference to the record on file here discloses that said paragraph of the bill of particulars read: "Room within which all public utility installations can best be located and maintained under Section 8757, R.S.Mo.1939 [now § 227.240], for the safety, convenience, and welfare of public travel and traffic, and where they will least interfere with the construction and maintenance of the highway."

Notwithstanding all of the property was not to be occupied by the highway, the court ruled Art. IV, § 29, Mo.Const., authorized Relator to construct "limited access" roads, and now § 227.120 vested Relator "with authority to institute proceedings

to condemn lands for right-of-way, and 'for any other purpose necessary for the proper and economical construction of the state highway system.'" (1. c. 67 [3].) The court also held that the Commission, in exercising its discretion, was "not limited to the taking of only so much land as is actually necessary for the construction of the road, but may be governed by the purposes stated in its bill of particulars"; and that the Commission's legislative action in determining just what land was necessary for the proper and economical construction and maintenance of State highways was not subject to judicial review in the absence of allegations and proof of fraud or bad faith or an unwarranted abuse of discretion (1. c. 69 [14]).

In the case before us the use of the substitute location has been determined. It is for an authorized public use. It is for the improvement of the highway. The Commission has found the appropriation necessary for the proper and economical construction and maintenance of Highway 44 of the National System of Interstate and Defense Highways (§ 227.120(3) and (5)) and for the removal of pipe lines under its control and supervision (§ 227.240) from an interchange on said highway. See also Mo.Const. Art. IV, § 30, Second (3), (d), and (5). Relator was authorized to appropriate the substitute location for the existing pipe lines to the extent here involved.

■ Does this action of Relator violate constitutional provisions to the effect that the General Assembly has no power to grant public money or property of the State to any private corporation? See Mo.Const. Art. III, §§ 38(a) and 39(2). Said § 38(a) also provides: "Money or property may also be received from the United States and be redistributed together with public money of this state for any public purpose designated by the United States." State ex inf. McKittrick v. Southwestern Bell Tel. Co., Banc, 338 Mo. 617, 92 S.W.2d 612, was a quo warranto proceeding to prohibit

defendant from maintaining its poles, wires and conduits on, over and under certain State highways, a privilege accorded defendant under what is now § 227.240. The State contended that said section was unconstitutional, being in contravention of Mo.Const.1875, Art. IV, § 46, reading: "The General Assembly shall have no power to make any grant, or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever * * *." That case pointed out that said § 46 prohibited "only gratuitous grants" of public money; and concluded (1. c. 614, 92 S.W.2d): "The General Assembly no doubt considered that the benefit to the general public arising from the promotion of the extension of such [telephone] service justified the granting of the privilege of the use of the highways. While that benefit may not be said to be a formal consideration, as that term is generally understood, yet it is that benefit and that consideration which takes this grant out of the class of grants prohibited by the Constitution."

Under the record before us a formal consideration passes to the State for the relocation of Phillips' pipe lines; to-wit: The surrender of a portion of Phillips' existing private right of way easement interfering with the proposed highway interchange. This involved factors closely connected with the safety and welfare of the traveling public and a right Relator could not compel Phillips to surrender without making some provision therefor. § 227.240 and Southwestern Bell Tel. Co. case, supra. A grant of public money to a private corporation is not established. See also quoted Mo.Const. provisions, Art. III, § 38(a) and Art. IV, § 30, Second (3) (d) and (5); Fitzsimmons & Galvin v. Rogers, 243 Mich. 649, 220 N.W. 881, 886 [7, 8]; Brown v. United States, supra.

Mention is made by condemnees that Relator alleges condemnees' lands are subject to special benefits and that Phillips has no such right. Allegations respecting

the measure of damages for the appropriation of the substitute strip for the relocation of Phillips' pipe lines are not determinative of whether Relator stated a claim for the appropriation of said strip.

The judgment dismissing ¶¶ 7, 30.20 and 30.21 of Relator's petition is reversed and the cause remanded for proceedings not inconsistent herewith.

BARRETT and STOCKARD, CC., concur.

All of the Judges concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.