41270.   BENTON et al. v. STATE HIGHWAY DEPARTMENT.

ARGUED APRIL 7, 1965—DECIDED MAY 26, 1965—
REHEARING DENIED JUNE 18, 1965.

*Bloch, Hall, Groover & Hawkins, Denmark Groover, Jr.,* for plaintiffs in error.

*Eugene Cook, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General, Phillip Benson Ham,* contra.

HALL, Judge. The State Highway Department is authorized to use the procedures prescribed by the 1961 Act when it condemns land for State-aid public road purposes in pursuance of any law so authorizing. *Code Ann.* § 36-1301; *State Hwy. Dept. v. Hatcher,* 218 Ga. 299 (127 SE2d 803). The law authorizing condemnation for State-aid public road purposes is found in Ga. L. 1919, p. 247 (*Code* § 95-1701). That Act creates a system of State-aid roads to be designated, constructed, improved and maintained by the State through the State Highway Department. The law authorizes and empowers the State Highway Department to condemn and acquire rights of way for maintaining, improving and constructing State-aid roads, and for the use of the system of State highways. *Code* §§ 95-1701, 95-1715, 95-1724.

The issue now before this court is whether the taking of the condemnee's land for the relocation of the gas company's interstate pipe line was, in the circumstances of this case, for a State highway use, for which the condemnor has the power to condemn under the 1919 Act, supra. Other courts have been confronted with like issues with respect to the statutes of their states.

A Virginia statute gave railway companies the power to condemn land for certain specific railroad purposes "or for other necessary railroad purposes." The Supreme Court of Appeals of Virginia held that this statute gave the condemnor railroad the right to condemn land for the purpose of relocating a portion of a highway right of way which the railroad had condemned for a spur track; ". . . the taking of the defendant's lands to relocate the section of the highway and creek, was in the

public interest, incidental to and implied from the broad powers of eminent domain given the railway company" under the statute. Tiller v. Norfolk &c. R. Co., 201 Va. 222 (110 SE2d 209). The Supreme Court of Missouri held that a statute empowering the Highway Commission to condemn lands for any purpose necessary for the proper and economical construction and maintenance of the state highway system authorized a taking of land for the necessary relocation of petroleum pipe lines within the limits of a highway. State Hwy Comm. v. Eakin (Mo.), 357 SW2d 129. The Supreme Judicial Court of Massachusetts held that a statute conferring power to condemn property necessary for carrying out the statutory purposes to construct, maintain, repair, and operate the Massachusetts Turnpike included the power to procure an easement and create a right of way for the benefit of parcels of land incidentally deprived by the highway of access to an existing way, this being a by-product of the building and operation of the turnpike and in furtherance of a public purpose. Luke v. Massachusetts Turnpike Authority, 337 Mass. 304 (149 NE2d 225).

Other decisions holding condemnation of land to be provided as a substitute for other land taken by public necessity to be within statutory authority are Smouse v. Kansas City Southern R. Co., 129 Kan. 176 (282 P 183); Langenau Mfg. Co. v. City of Cleveland, 159 Ohio St. 525 (112 NE2d 658); Mississippi State Highway Comm. v. Morgan, 248 Miss. 631 (160 S2d 77) (Ck. re stat.); accord United States v. 10.47 Acres of Land, 218 FSupp. 730; 2 Nichols, Eminent Domain 667, § 7.226; 18 Am. Jur. 711, § 80.

The constitutional power of a State and of the United States to condemn land for "substituted compensation" was challenged long ago and has been upheld by many courts. Pitznogle v. Western Maryland R. Co., 119 Md. 673 (87 A 917); Brown v. United States, 263 U. S. 78 (44 SC 92, 68 LE 171); Dohany v. Rogers, 281 U.S. 362 (50 SC 299, 74 LE 904); Watkins v. Ughetta, 78 NYS2d 393, affirmed 297 NY 1002 (80 NE2d 457). Whether a condemnation is within constitutional power depends upon whether the property is to be devoted to a public use. The decisions on the constitutional issue are applicable when, as in the present case, the issue is whether the taking of land, to be

used as "substituted compensation" for other land taken for a specific public use under statutory authority, is for the specific public use covered by the statute.

In Brown v. United States, 263 U.S. 78, supra, the United States condemned land to relocate most of a town and reunite it with the one quarter of the old town to be left after the rest was flooded by the waters of a river. It was held that the acquisition of the town site was so closely connected with the acquisition of the district to be flooded and so necessary to the carrying out of the project that the public use of the reservoir covered the taking of the town site, and that it was a necessary step in, and a natural and proper part of, the construction of the dam and reservoir to make provision for a substitute town as near as possible to the old one. The condemnation of property for the relocation of a railroad right of way taken for a state highway has been held to be so essentially a part of the project for improving a public highway as to be for a public use. Dohany v. Rogers, 281 U.S. 362, supra; Pitznogle v. Western Maryland R. Co., 119 Md. 673, supra; Fitzsimmons & Galvin v. Rogers, 243 Mich. 649 (220 NW 881); State Hwy. Comm. v. Eakin, 357 SW2d 129, supra.

At the hearing in the present case evidence was presented which authorized the court to find that the present location and length of the gas company's pipe line under the highway was such that repairs could not be completed without impractical delay, and that delay in required repairs could result in undue hazard and inconvenience to the traveling public and interruption of service to the gas-consuming public, and that it was necessary in the public interest that the pipe line be relocated to permit needed repairs to be made as quickly as practically possible; and that this necessary relocation of the pipe line was incident to and resulted from the taking of property for State-aid public road purposes, and was essentially a part of the highway project; and that the taking, therefore, was in furtherance of and reasonably necessary for a public State highway use. Accord Barrett v. State Hwy. Dept., 211 Ga. 876 (89 SE2d 652). The evidence included expert testimony showing these facts: On the gas company's easement crossing the proposed highway there are a 10-inch and a 14-inch gas pipe line which bring gas

from Texas to distributors supplying 25 percent of Atlanta's gas, and supplying gas to the cities of Forsyth, Jackson, Griffin and Barnesville. Government regulations require that pipe lines under highways be encased so that repairs can be made by pulling the pipes from underneath the highway rather than tearing up the highway and interfering with traffic. The pipe line now crosses under the proposed highway diagonally 700 feet. The gas company has never pulled a pipe as long as this, and it is not feasible to pull a pipe of this length. There could be a hazard from fumes if the pipe was broken. A break in the pipe line could cause damage to the highway and a hazard to the traveling public, especially if the pipe could not be pulled and the road had to be cut at the place where the pipe line now crosses under the highway. The proposed relocation would make the repair of a broken pipe safer. At the place where the pipe line now crosses under the proposed highway the topography is an impediment to pulling the line more than 100 feet, as the pipe being pulled would go into a bank; in the event of a breakage in the line under the highway it would have to be pulled and cut in 100-foot lengths and the sections welded together after repair before being replaced; it could take days to complete repairs in this way. At the proposed relocation repairs could be made by pulling 223 feet of pipe at once, and could be completed in 5 or 6 hours. If the gas carried by these lines were cut off for a long period some of the Georgia cities supplied by them would be without gas. In the interest of safety and to prevent inconvenience to the public it is imperative that breakages in the gas lines be repaired as quickly as possible. Except for the location of the highway over the gas company's present easement there would be no necessity for the relocation of the pipe line.

To uphold the condemnor's acquisition of the property in this case is not to authorize the use of the power of eminent domain to acquire property to be used by private individuals for private use and private gain. The decision in *Housing Authority of City of Atlanta v. Johnson*, 209 Ga. 560, 563 (74 SE2d 891), therefore is not applicable.

The trial court did not err in denying the petition to set aside the judgment and the condemnor's title to the property taken.

*Judgment affirmed. Felton, C. J., Bell, P. J., Jordan, Eberhardt and Pannell, JJ., concur. Nichols, P. J., Frankum and Russell, JJ., dissent.*

FRANKUM, Judge, dissenting. I must dissent from the judgment of affirmance in this case and from the opinion of the majority because I do not think that under the Georgia authorities the State Highway Department has, under the provisions of *Code Ann. Ch.* 36-13, any power to condemn land for any purpose other than for use as a "public highway of the State." While the amendment to the 1961 Act, enacted at the September-October, 1962, Extraordinary Session (Ga. L. 1962, Sept. Sess., pp. 37, 38), undoubtedly broadened the original meaning embodied in the language "State-aid public road purposes" as used in the 1961 Act, it did not so broaden it as to authorize the Highway Department to condemn land for any use other than highway purposes. Therefore, upon application of the general principles enunciated in *State Hwy. Dept. v. Hatcher*, 218 Ga. 299, 302 (127 SE2d 803), which general principles are still perfectly sound and applicable law, I do not think that the Highway Department has been granted authority to condemn land for pipe line purposes. The record in this case shows that this is what was done here.

I am authorized to state that Nichols, P. J., and Russell, J., concur in this dissent.